EMMA ALBRECHT

*v.*

WILLIAM HUNECKE.

*Opinion filed April 16, 1902.*

1. FIDUCIARY RELATIONS—*when fiduciary relation does not necessarily exist.* A fiduciary relation does not arise merely from the fact the parties are brother and sister and tenants in common.

2. SAME—*law does not presume that purchase by brother from sister is fraudulent because of relationship.* Ordinarily, tenants in common, though brother and sister, may deal with each other respecting the property, and the law does not presume that a purchase by the brother from the sister is fraudulent merely on account of their relationship, since the question whether there is a fiduciary relation between them depends upon all the facts of the case.

3. EQUITY—*when deed will not be set aside in equity.* A deed from sister to brother will not be set aside in equity on the ground of an abuse of a fiduciary relation between them, where the sister never questioned the validity of the deed for about fourteen years, although residing near her brother and with knowledge that he claimed to own the premises, was paying taxes thereon, keeping up repairs and supporting their mother, during all of which time there was neither disability nor confidential relation.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM HARTZELL, Judge, presiding.

R. E. DORSEY, and BURTON & WHEELER, for appellant.

E. C. & W. F. SPRINGER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The bill in this case was filed by appellant, Emma Albrecht, and prayed for a partition of eighty acres of land in Madison county and twenty acres in Macoupin county, and for an accounting, and the cancellation of any conveyances made by her affecting her interest in the land. By the bill she claimed title to the undivided half of the lands as tenant in common with her brother, the

appellee, William Hunecke, by descent from their father, Adolph Hunecke, who died May 27, 1884. She also alleged that the premises in Madison county were the homestead, and that she and appellee lived on the same with their mother; that there was no administration of the personal estate and appellee took possession of the same; that about one year after her father's death the appellee paid her $500 as her part of the estate; that she had been informed that appellee claimed to have some paper or papers releasing her interest in the premises for said sum of $500; that she did not knowingly sign any paper or papers that could affect her title to the premises, and that if the defendant held any such papers they were obtained by fraud, circumvention and misrepresentation. Appellee answered, admitting the death of the father, Adolph Hunecke, and that the title passed to appellant and himself subject to dower and homestead of the widow, and claimed title to the share of the appellant by virtue of conveyances to him. He alleged that the personal estate was properly divided and accounted for between his mother, appellant and himself, and set up the Statute of Limitations as to the personal estate. The cause was heard and the bill dismissed.

The evidence was to the following effect: Adolph Hunecke owned the lands and lived on the tract in Madison county, which was in cultivation and was his homestead. He died intestate May 27, 1884, leaving his widow, Mary Hunecke, and his two unmarried children, the complainant and defendant, his only heirs-at-law. The father had been troubled with asthma and finally died of consumption. Defendant and complainant worked on the farm before their father's death, and after that event they lived with their mother and continued to work there. The only money Adolph Hunecke left was $15, in three gold pieces, which the widow divided between her three children,—the complainant, the defendant, and August Hagemenn, a step-son of the deceased. There was some

farm machinery, live stock and other personal property, concerning the value of which there is much dispute, the testimony for the different parties fixing it at prices ranging from $550 to $2000. The land in Madison county was worth from $40 to $50 an acre, and there was a mortgage of $1375 upon it. The tract in Macoupin county was worth $20 an acre. The widow had dower in the lands and homestead in the eighty acres. There was no administration of the estate, and, consequently, no widow's award. The widow claimed the eighty acres as her own after her husband's death, and complainant called and treated it as the mother's place. Defendant worked the farm, giving his mother what money came in, and complainant did the housework, milked the cows and helped in the fields at times. In the spring of 1887 the complainant and the defendant had some talk about a settlement. The defendant asked complainant if she would take $500, and if not, he wanted the place sold. She told him she did not want the farm sold. Complainant testified that he said he was going to give her $500, and asked her if she would be satisfied with that first, and he would give her more after a while. He gave her his note for that amount and afterwards paid it. On March 8, 1887, she executed two quit-claim deeds, one for the eighty-acre tract, for the consideration of $400, and the other for the twenty-acre tract, for the consideration of $100. The deeds were made at the house by William McKittrick, who testified that he met defendant and complainant in town on the sidewalk; that they stopped him and said they had a little business they wanted fixed up about the land, and asked him if he would go to the house; that in a day or two he took both warranty and quit-claim deeds with him and went to the house; that defendant and complainant talked the matter over between themselves, and the complainant wanted him to fix it so there would be nothing coming back on her on account of the debts on the place; that he said he would

write out a quit-claim deed of the place that would clear her of everything, and that he wrote the deeds and they were signed. The complainant acknowledged the deeds the next day before a notary public at Staunton. She testified that she did not know what McKittrick's business was at the farm nor why he was there; that her brother never spoke a word about the land; that she never signed any deed, and never heard that she had signed any deed until about three weeks before she testified, and that she never saw the deeds or delivered any deeds. She further said that she did not know what she was signing when she executed the deeds; that she could not read English writing, and that the defendant was so cross and would growl at her that she would do whatever he wanted her to do. In November, 1887, complainant was married and removed to a farm near by. She was then about twenty-five years of age and the defendant four or five years older. After her marriage defendant told her she could have a heifer from the place, which she received. The defendant was married in the spring of 1889, and he and his wife and children have lived on the farm continuously. He has worked and managed it and took care of his mother until she died, January 19, 1901. The mother was very helpless before her death and for several months had to be cared for as a child. Defendant has paid all taxes and made all repairs, has built an addition to the house, and paid all the doctor's bills and expenses for his mother. He got $1000 from his father-in-law, which he used on the farm and for running expenses. He has reduced the mortgage $100 and renewed it for $1275.

It is argued that there was a fiduciary relation existing between complainant and defendant; that he obtained the deeds by virtue of that relation; that she was under his dominion and control, and that the burden was on him to show that the contract was reasonable, fair and for an adequate consideration, and if he failed to estab-

lish such facts and that the contract was beneficial to her, it must be set aside. There are relations which, from their very nature, imply duties and obligations and are fiduciary in their character, such as those of trustee and *cestui que trust*, guardian and ward, principal and agent, and the like; but a fiduciary relation does not arise merely from the fact that parties are tenants in common of real estate or because they are brother and sister. Ordinarily, tenants in common may deal with each other respecting the common property, and the law does not assume that a purchase by a brother from a sister is fraudulent merely on account of the relationship. The question whether there is a fiduciary relation between such parties, so that confidence is reposed by one in the other, will depend upon all the facts and circumstances of the particular case. In this case, if the circumstances would justify a conclusion that there was a fiduciary relation between the complainant and the defendant, and that the deeds were made because of a fear that the defendant would be cross and growl in case of refusal, no one disputes that such relation came to an end in the fall of 1887, when the complainant was married and left the premises. After that she lived with her husband on their own farm, separate from the defendant, and there remained nothing but the relationship of brother and sister. She was neither under his dominion nor control, but was entirely free from both. Although she says that she did not knowingly sign any deed, there can be no question that she did sign and acknowledge the deeds, and it is quite clear that she understood the bargain that she made and knew that she had executed the deeds. After her marriage she lived near by, and necessarily knew that her brother claimed to own the premises, was paying the taxes, keeping up the repairs and supporting and caring for their mother. For about fourteen years she did not question the transaction or the validity of the conveyances, during all which time

there was neither disability nor confidential relation, and equity would not now interfere in her behalf, even if the deeds were made when a confidential relation existed and under the influences which she states. She had executed the deeds and received the consideration and never offered to restore it, even in the bill filed in this case. According to her own account she knew that she had sold something connected with the' estate and had received a note for $500 in payment. The note was paid long after her marriage, when she was living separate from her brother and does not claim that he exercised any influence over her. She took the money and kept it, knowing that it was for an interest in the estate. Her testimony that she never made any deed or disposed of her interest to the defendant in any way is wholly inconsistent with the argument of counsel that defendant obtained the conveyances by virtue of the influence arising from a fiduciary relation. She says she never sold her interest nor agreed to sell it, and that defendant never bargained for it, and that if any deed was obtained it was by fraud and deception, without her knowledge. That claim is satisfactorily met by the evidence, which shows that she knew what she was doing and that no fraud was practiced upon her.

It does not seem to be claimed that complainant could have any relief as to the personal property, and it is clear that she could not. Under all the circumstances we can not say that there are any equities in her favor. When the arrangement was made, the mother had a homestead in the farm and a right of dower in all the lands, and if there had been administration she would have had a widow's award. It is true that dower was never assigned and there was no administration; but it is also true that the children had assented to her claims, and it was understood that she was to have her home on the place and her maintenance from it. She continued to have her home there and her support from the place, and the only

justifiable inference is that it was so intended by the parties. We are satisfied that the court was right in dismissing the bill.

The decree of the circuit court is affirmed.

*Decree affirmed.*