(No. 14611.—Judgment affirmed.)

JOHN W. LUTTRELL, Defendant in Error, *vs.* CHARLES E. WYATT *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. FRAUD—*representation, to constitute fraud in law, must be more than a mere promise.* In order to constitute a fraud in law the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention, and a promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action for deceit.

2. SAME—*in equity, subsequent conduct may be indicative of fraud in the original transaction.* In order for equity to relieve against fraud the fraud must be in the original transaction and not in its non-fulfillment, and if the original transaction was valid when entered into it is not rendered invalid by any subsequent act or omission on the part of the wrongdoer, but evidence of subsequent acts may be indicative of fraud in the original deal.

3. SAME—*when equity will relieve against fraudulent promise.* Equity will regard as a fraud a mere promise relied upon by the complainant to his damage where the subsequent conduct of the promisor raises a presumption that the contract was fraudulent in its inception and shows that he had no intention of carrying out his promise and when the promise was accompanied by false representations to induce the complainant to act.

4. EQUITY—*when representation of future intention may be enforced in equity.* A representation of a future intention absolute in form, deliberately made for the purpose of influencing the conduct of the other and then acted upon by him, is generally the source of a right, and may amount to a contract enforceable as such by a court of equity.

5. SAME—*when, only, will equity deny relief on the ground of laches.* A court of equity applies the doctrine of *laches* in the de-

nial of relief only where from all the circumstances the delay will render the relief to which the complainant would otherwise be entitled, inequitable and unjust; and mere delay, alone, for a period less than that covered by the Statute of Limitations, is not such *laches* as constitutes a defense.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

ALONZO HOFF, and SAMPSON, WOOD & GIFFIN, for plaintiffs in error.

ROBERT H. PATTON, for defendant in error.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This cause comes to this court by writ of *certiorari* to the Appellate Court to review a judgment of that court affirming a decree of the circuit court of Sangamon county setting aside a decree enjoining John W. Luttrell, defendant in error, and Ralph Luttrell, from prosecuting an action in assumpsit against plaintiffs in error, Charles E. Wyatt and his wife.

While there is some controversy with respect to the transactions out of which this litigation arises, the great weight of the evidence shows the facts to be substantially as follows: John W. Luttrell is the brother of the mother of Charles E. and Fred S. Wyatt. Some time prior to September, 1912, a brother, Thomas Luttrell, died, and John received as his distributive share of the brother's estate about $2600. Charles E. Wyatt, who attended to the details of collecting his mother's share, also collected and turned over to his uncle his share. In September, 1912, Fred S. Wyatt, who lived at Enid, Oklahoma, came to Springfield and secured a loan of $1500 from Luttrell. Luttrell was about sixty-four years of age, had for some

years been addicted to the use of intoxicating liquors, was almost blind, and had little education. He had been married twice and there were two sets of children. His second wife and some of the children desired to have the note for this money made payable to a son, Ralph Luttrell, as trustee, and it was accordingly done. Fred executed a mortgage conveying certain real estate in Enid as security for the payment of the note. The note and mortgage were prepared by Charles in his office. At that time Luttrell was shown a photograph of what purported to be a brick factory building worth about $16,000 located on the property covered by the mortgage. The Luttrells state that Charles told them at the time that he knew that his brother Fred owned this property and that it was good security for the loan, and that he would personally guarantee the loan and would pay his uncle the money any time he wanted it. Charles denies making these statements and states that his only part in the transaction was to prepare the papers at the request of his uncle. The papers were left at the office of Charles. Some weeks later the Luttrells learned that they should have had an abstract to the real estate in Oklahoma showing the state of the title before the mortgage was accepted and that the mortgage should have been recorded. Failing to receive a satisfactory explanation of these omissions from the Wyatts they employed an attorney, and his investigation showed that Fred had no interest in the mortgaged real estate. In February, 1913, the attorney told Charles the result of his investigation and told him that the Luttrells would look to him to protect them from loss. There were later conversations between the attorney and Charles, but nothing was done until Charles heard on the streets of Springfield that the grand jury was investigating the matter. He thereupon sought an interview with the Luttrells, and later, as a result of a settlement reached between them, he gave to Ralph Luttrell, trustee, a check for $500 and two non-negotiable notes

dated December 31, 1913, one for $526.25, payable six months after date, with interest at five per cent per annum, and the other for $500, payable one year after date, with like interest.

In July, 1914, John W. Luttrell and his son Burley went to the home of Charles E. Wyatt and requested payment of the note for $526.25. Wyatt refused payment but finally loaned Luttrell $35, and the note was voluntarily delivered to him with no definite understanding as to what was finally to be done about the payment of it. A few days later the Luttrells employed an attorney to collect this note, and an action in assumpsit was begun August 3 in the name of Ralph Luttrell, trustee. Immediately Wyatt put into execution a scheme to induce his uncle to release him from liability on these notes. He told him that his wife and his son Ralph were trying to get the money for themselves, and that he did not want to pay the notes until he could pay the money to him personally. He told him to have nothing more to do with the action brought by Ralph and not to talk with the attorney whom they had employed to bring the action. Thereafter Luttrell refused to co-operate with his son Ralph or to have anything to do with his attorney. Repeatedly efforts were made by Ralph and the attorney to have conferences with him but he always ignored them. Wyatt told him repeatedly that he would pay him the money but that he did not want to pay it to Ralph. Luttrell was living with his son Burley at Beardstown a part of the time and the rest of the time he lived at the home of a niece in Franklin. Every time Luttrell came to Springfield and Wyatt found it out, the latter would tell him that his wife and his son were going to have him arrested and have a conservator appointed or have him sent to the insane asylum. He would take him to the depot and get him out of town as soon as he could. He loaned him small sums of money and did other acts of kindness to keep his confidence.

September 28, 1914, Wyatt caused to be prepared by his attorney an instrument stating that the notes were executed without consideration; that the action in assumpsit was brought against the wish and without the consent of John W. Luttrell; that Luttrell desired the action dismissed and desired that all matters arising out of the execution of the notes be settled and compromised out of court, and that in consideration of one dollar and other good and valuble consideration he released Charles E. and Margaret J. Wyatt from any and all liability on account of said notes. This instrument was signed and acknowledged by Luttrell with full knowledge of its contents. Luttrell testified that Wyatt told him that it was necessary to execute such an instrument in order to have the action in assumpsit dismissed and to cancel the notes made payable to Ralph; that as soon as this was accomplished and he was released from liability on account of the notes made payable to Ralph he would pay to Luttrell the money due on the notes; that he would see that Luttrell received all the money due him but that he did not want to pay it to the trustee. Wyatt denies this arrangement and claims that the release was executed at Luttrell's suggestion. Five days after the release was executed Wyatt filed a bill to enjoin Ralph Luttrell, individually and as trustee, from prosecuting the action in assumpsit, and Ralph filed an answer to the bill on behalf of himself and his father. About this time Luttrell learned that Wyatt was claiming to be released from all liability on account of said notes, and he mentioned the matter to Wyatt. Wyatt denied that he claimed to be released and told his uncle that he was surprised that such information had been conveyed to him; that he would not treat his old uncle that way nor permit anyone else to do so; that he would see that he received his money in a short time, but that it was necessary to take the action he was taking in order to prevent the trustee from getting the money. He continued to tell his uncle that his wife and his son were after him and

intended to have him arrested and sent to the insane asylum, and continued to rush him out of town every time he found him in Springfield. The day before the hearing was had before the master in chancery on the bill for injunction Luttrell was in Wyatt's office with three men from Franklin. Luttrell told Wyatt that he had come to take care of the suit then pending in court and that he had brought the men as witnesses to his mental capacity. Wyatt told him, in the presence of these men, that he did not know when the case was going to be heard; that it was not necessary for him to be there or to have any witnesses; that he would look after it for him; that he would see that he received his money and that he need not bother about it, and that he should stay out of town or he might be arrested. He was then taken by Wyatt and put on the train and sent home. The day following this interview Wyatt testified before the master in chancery, and a decree was subsequently entered enjoining the prosecution of the action in assumpsit theretofore filed and declaring the notes theretofore given by the Wyatts to Luttrell to be forever canceled, discharged and released. Two and a half years later, August 16, 1917, Luttrell filed his bill in the circuit court of Sangamon county against Charles E. and Margaret J. Wyatt and others, asking that the decree for injunction be set aside on the ground that it was obtained by fraud and false representations. A hearing was had in open court on the bill and answer thereto, and the chancellor found that the allegations of the bill were sustained and entered a decree setting aside the decree for injunction theretofore entered, and ordering that the Wyatts pay John W. Luttrell $1166.71, the amount due on said notes, less certain credits unimportant here.

Plaintiffs in error first contend that the notes were executed without consideration and that they were procured through duress and intimidation. The chancellor found against them on both these points and his finding is

clearly supported by the evidence. When Charles E. Wyatt gave the trustee his check for $500 and executed the two notes, the trustee assigned and delivered to him the $1500 note and mortgage theretofore executed by Fred S. Wyatt. While the mortgage was worthless, there is nothing in the record to show that the note was not worth full value. There is no evidence in the record showing or tending to show that the Luttrells ever suggested to Charles that they intended to prosecute him and his brother criminally for their connection with the transaction of September 30, 1912, nor is there any proof that they took any steps whatever to bring the matter to the attention of the grand jury. Charles sought the Luttrells and offered to buy Fred's note and mortgage by delivering to them his check and two notes, and the Luttrells accepted his offer.

The point on which plaintiffs in error seem to rely most strongly is that the release executed September 28, 1914, was a valid and binding release under seal, and that this release discharged them from all liability on the notes and that all matters relating to the subsequent injunction decree are wholly immaterial. If the release stood alone in this record there would be merit in their contention, but it is clear to anyone reading the entire record that the execution of the release was just one step in a well-planned scheme of Charles E. Wyatt to relieve himself from liability on these notes. The testimony of Luttrell that Charles promised him repeatedly from the time the money was loaned to Fred until the injunction decree was entered that he would see that he was re-paid all the money he had loaned, with interest, is supported by the testimony of several disinterested witnesses. It is clear from the testimony in the record that the release was knowingly and understandingly executed by Luttrell, but it is equally clear that it was executed pursuant to an understanding between Wyatt and Luttrell that Wyatt would pay to Luttrell the money due on these notes.

Relying on language used by this court in *Murphy* v. *Murphy*, 189 Ill. 360, *Miller* v. *Sutliff*, 241 id. 521, and *Grubb* v. *Milan*, 249 id. 456, plaintiffs in error argue that, granting that Wyatt promised to pay Luttrell the money due on the notes if Luttrell would execute the release, the promise does not constitute a fraud. It is true that in order to constitute a fraud in law the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention. A promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of an action for deceit. (*Grubb* v. *Milan, supra; Keithley* v. *Mutual Life Ins. Co.* 271 Ill. 584.) In order for equity to relieve against fraud the fraud must be in the original contract or transaction and not in its non-fulfillment. If the original transaction was valid at the time it is not rendered invalid by any subsequent act or omission on the part of the wrongdoer. Evidence of subsequent acts will not change the nature of the transaction but it may be indicative of fraud in the original deal. (4 R. C. L. 495.) This court has frequently held that where a grantor conveys land and the consideration is an agreement by the grantee to support, maintain and care for the grantor during the remainder of his or her natural life and the grantee neglects or refuses to comply with the contract, the grantor may in equity have a decree rescinding the contract and setting aside the deed and re-investing the grantor with the title to the real estate. A careful examination of these cases leads to the conclusion that the intervention of equity in such cases has been sanctioned on the theory that the neglect or refusal of the grantee to comply with his contract raises a presumption that he did not intend to comply with it in the first instance and that the contract was fraudulent in its inception. (*Stebbins* v. *Petty*, 209 Ill. 291.) We have also held that where a wife promised to treat her husband kindly and discharge her duty to him as his wife and

thereby secured the execution of a deed to certain real estate of her husband, the deed would be set aside where the wife broke her promise, on the ground that she contemplated breaking the promise at the time she was importuning her husband to convey the property to her. (*Fischer* v. *Fischer,* 245 Ill. 426.) In another case a bill was filed for an injunction and a demurrer thereto sustained. The bill showed that the complainant was served with a garnishee process; that he had a good defense but made none because the defendant told him that he would dismiss the garnishment proceedings, and relying upon this assurance he paid no further attention to the matter; that in violation of that agreement the defendant fraudulently proceeded and perfected his judgment against him as garnishee and that he threatened to collect the same. This court held that the bill stated a clear case of fraud. (*Wierich* v. *De-Zoya,* 2 Gilm. 385.) The principles announced in these cases mark as a fraud, from which defendant in error is entitled to relief, the promise of Wyatt to pay the amount due on the notes as soon as he had defeated Ralph's suit, when he had no intention of carrying out this promise but made the statement to induce defendant in error to execute the release. The fraud from which defendant in error is entitled to relief in this case does not consist, alone, of this false promise which Wyatt never intended to keep. The evidence also shows a number of false representations made by Wyatt to defendant in error to the effect that his wife and his son Ralph were trying to get the money for themselves and that they were looking for him to arrest him, and that he was accompanying him to the depot to protect him from arrest. The evidence shows these representations to have been absolutely false and without foundation, and it is clear that they were aptly fitted to accomplish his fraudulent purposes.

Regardless of whether we hold Wyatt's promise to pay these notes a false representation from which equity will

relieve, defendant in error is entitled to recover the amount due on these notes on the record before us. A representation of a future intention absolute in form, deliberately made for the purpose of influencing the conduct of the other party and then acted upon by him, is generally the source of a right, and may amount to a contract enforceable as such by a court of equity. (2 Pomeroy's Eq. Jur.— 4th ed.—1811.) That Charles E. Wyatt did promise repeatedly to pay to Luttrell the sum due on these notes is established by testimony of several witnesses, at least two of whom are wholly disinterested.

Plaintiffs in error further contend that defendant in error is barred from bringing this proceeding because he is guilty of *laches*. The decree for injunction was entered December 22, 1914, and this bill to impeach that decree was filed August 16, 1917. A court of equity applies the doctrine of *laches* in the denial of relief only where, from all the circumstances, the delay would render the relief to which the complainant would otherwise be entitled, inequitable and unjust. (*Coryell* v. *Klehm*, 157 Ill. 462.) Mere delay, alone, for a period less than that covered by the Statute of Limitations is not *laches* that constitutes a defense. It is only when the delay is accompanied by some other element rendering it inequitable for the complainant to assert his right that the *laches* will bar his right within the statutory period. (*Compton* v. *Johnson*, 240 Ill. 621.) There is no contention, and certainly no evidence on which to base the contention, that conditions are any different from what they were at the time when the decree for injunction was entered, and the lapse of time has not prejudiced plaintiffs in error in any way.

The findings of the chancellor are clearly in accordance with the law and the weight of the evidence, and the Appellate Court properly affirmed the decree.

*Judgment affirmed.*