(No. 31804.—

LAWRENCE W. McDONALD, Appellant, *vs.* EUGENE H. McDONALD *et al.*, Appellees.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

Branson Wright, of Bloomington, for appellant.

R. M. O'Connell, of Bloomington, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, Lawrence W. McDonald, brought an action in the circuit court of McLean County against the defendants, Eugene H. McDonald, his brother, and Hanna I. McDonald, Mary E. Hogan and Sarah M. Hackett, his sisters, to set aside five deeds effecting a voluntary partition of a farm, principally upon the ground of fraud, and for partition of the land by the court. The Metropolitan Life Insurance Company, the owner of a mortgage on the farm, was also made a defendant. Eugene McDonald filed a counterclaim against plaintiff, his former partner in the operation of the farm, for an accounting of partnership profits. In addition, Hanna McDonald and Mary Hogan filed a joint counterclaim against plaintiff, alone, for an accounting of his share of the rent allegedly due them for the use of their interests in the land by the partnership prior to its dissolution. Sarah Hackett filed a similar counterclaim against plaintiff. Upon stipulation of the parties, the cause was referred to a special master in chancery for hearing on the single issue of whether the challenged deeds should be set aside. The master found that the deeds had been obtained in good faith and without fraud and recommended a decree accordingly. The chan-

cellor confirmed the report of the master, and entered a decree declaring the partition deeds valid and binding and retaining jurisdiction over all questions raised by the several counterclaims. Lawrence McDonald prosecutes a direct appeal to this court, a freehold being necessarily involved.

The farm in question contains three hundred and twenty acres and was acquired by the five brothers and sisters, as tenants in common, in 1929, subject to the dower rights of their mother, who died in 1939, and a mortgage debt to the defendant insurance company of $31,000. About the same time, a second mortgage was given to secure the payment of a loan of $7000. Lawrence and Eugene McDonald had farmed the land as equal partners since 1921 and Lawrence and his wife, Margaret, have resided on the farm continuously since 1927. Since 1929, Lawrence and Eugene have operated the entire farm under an oral arrangement with their sisters, not relevant here. Improvements on the land, in 1929, consisted of a dwelling, a barn, a corncrib and other small buildings. The partners derived much of their income from raising pedigreed cattle and made extensive improvements, primarily with respect to completely renovating the original barn and erecting another large cattle barn. In 1945, partnership funds were used to purchase a house for Eugene McDonald in the nearby town of Merna. During all the years, Lawrence and Eugene maintained the farm, paid taxes, insurance, and interest on the mortgage debt, made small payments on the principal of the indebtedness, but paid no rent to their sisters, except to Mary Hogan who received varying amounts at sporadic intervals.

In the fall of 1946, Mary Hogan became dissatisfied with the farming arrangement because of the extreme animosity existing between Lawrence's wife, Margaret, and Eugene and her fear that Margaret was trying to break up the partnership. About the middle of September, she called several meetings of all the cotenants, except Sarah Hackett, who lived on the west coast. Although the details of these

meetings are disputed, they resulted in further conferences with an attorney who subsequently prepared partition deeds, dated October 17, 1946, which were signed by the four local cotenants and their spouses, with the exception of Margaret McDonald. Under these deeds, each brother and sister was to receive sixty-four acres of land, the tract containing all the improvements going to Eugene. The attorney was of the opinion that the deeds were not good without Margaret McDonald's signature and, consequently, many of the signatures were crossed out and the deeds were never used. Shortly thereafter, Mary Hogan and her husband and Eugene McDonald consulted another attorney, Hal M. Stone, Sr. He advised that a voluntary partition would be effective even though plaintiff's wife, Margaret McDonald, did not join in the conveyances and another set of partition deeds was prepared. These deeds, in addition to conveying the same tracts to the identical persons as the first set of deeds, also provided for the division of the mortgage debt among the parties. At the time, the debt to the defendant insurance company had been reduced to $28,500, but there was a second mortgage indebtedness of $5000. Lawrence and Eugene McDonald each assumed $6668 of the principal debt and one half the second mortgage debt, whereas each sister undertook to pay $5055 in discharge of the first mortgage indebtedness. On November 5, 1946, Mary Hogan and her husband, Eugene, and Lawrence McDonald and their wives, and Hanna McDonald, met in Stone's office and all but Margaret McDonald executed the deeds. They were then forwarded to and signed by Sarah Hackett and her husband and, later, were caused to be recorded.

At the time the deeds were executed, it was understood that Mary Hogan would farm her sixty-four acres separately, and that Eugene and Lawrence McDonald would continue to operate the rest of the farm as partners. There is some dispute, however, as to whether Lawrence and

Margaret McDonald were to be permitted to continue their occupancy of the farm dwelling.

According to Lawrence, two days after the deeds were executed, Eugene told him "I am not through with you yet," and, when pressed for an explanation, replied, "You will find out what I mean." Lawrence further testified that, about ten days later, Eugene announced that the partnership was no good and that he was going to break it up. All this was denied by Eugene. On December 20, 1946, Arlo E. Bane, an attorney engaged by Lawrence, consulted with Eugene at the farm. Bane stated that he understood it had been orally agreed when the deeds were executed that the partnership would continue and that Lawrence could reside on the farm, said that Lawrence was worried whether the agreement would be kept, and asked Eugene to affirm the agreement in writing in order to ease Lawrence's mind. Eugene confirmed Bane's understanding of the oral agreement but became angry at Bane's request for a written agreement and told him that they did not need his services. Eugene further stated that Lawrence could stay as long as he desired. Upon cross-examination, Bane testified that Eugene did not say he wanted Lawrence to move out of the house, or that he desired to terminate their farming arrangement but more or less indicated he wished to continue the existing arrangement. Nevertheless, Lawrence was still apprehensive and, about a week later, Bane discussed the matter with Hanna McDonald on his behalf. In the meantime, according to Eugene, Lawrence, after seeing Bane again, threatened to sue him. Subsequently, Eugene took the matter up with Hal M. Stone, Jr., an attorney, and Stone and Bane arranged for a voluntary dissolution of the partnership. The testimony is in hopeless conflict as to whether Lawrence or Eugene insisted on terminating the partnership but, in any event, the articles of dissolution were signed on February 21, 1947, and this action followed four months later. Eugene continued to

farm Hanna McDonald's and Sarah Hackett's land, but Lawrence allowed the tract assigned to him to lie idle in 1947 and did not begin to farm the land until 1948, under a court order providing that his action in so doing would not prejudice his rights in this case. Sarah Hackett, who never appeared as a witness, died during the trial and her heirs, and Eugene McDonald, as the administrator of her estate, were substituted as defendants.

Seeking a reversal, plaintiff first contends that the partition deeds are invalid because his wife did not join in their execution. The principle invoked is that a voluntary partition not binding on all the cotenants is not binding on any of them. (*Cochran* v. *Cochran,* 277 Ill. 244.) The difficulty with the contention made is that Margaret McDonald was not a cotenant. Although, as the wife of a cotenant, she had an inchoate right of dower in an undivided one-fifth interest in the property, it does not follow that her refusal to join in the partition rendered the deeds ineffective as among the cotenants, since the spouse of a cotenant is not a necessary party to a voluntary partition. (*Cole* v. *Cole,* 292 Ill. 154.) From the unquestioned circumstance that the value of his tract is considerably less than those of the others, particularly Eugene's, Lawrence also argues that the partition constituted a fraud against Margaret McDonald, rendering the deeds invalid. A concession that the partition reduced the value of the interest with respect to which she had an inchoate right of dower does not aid plaintiff, however, as his wife is the only one who can complain of this and she is not a party to the action.

Lawrence next contends that Eugene, as his partner, occupied the position of fiduciary and, consequently, the partition agreement was presumptively fraudulent and the burden rested upon Eugene and all the other individual defendants to show by clear and convincing evidence that the transaction was fair and equitable. The fiduciary rela-

tionship alleged extends to Eugene, alone, and no contention is made that it included the three defendant sisters. While it is true that where a conveyance arises out of a fiduciary relationship, all persons benefiting thereby, regardless of their individual relationship to the complaining grantor, must show that the transaction was fair and equitable, (*Addis* v. *Grange*, 358 Ill. 127,) it is equally true that where a conveyance arises outside the scope of a fiduciary relation shown to exist only as a matter of law, there is no presumption that the transaction resulted from undue inence. (*Stone* v. *Stone*, 407 Ill. 66; *Stoke* v. *Wheeler*, 391 Ill. 429.) In short, the partnership relation does not extend to all affairs and transactions between partners, and a conveyance outside the relationship is not presumptively fraudulent. Although the land partitioned in the case at bar was used by the partners in their business, it is manifest that Lawrence voluntarily entered into the partition agreement as one of the five cotenants, not as a partner, and that he dealt at arm's length with all of his cotenants, including Eugene. The mere fact that, at the time of the transaction, the parties were brothers and sisters and tenants in common does not establish a fiduciary relationship and, in the absence of a showing that one cotenant reposed trust and confidence in the others, there is no presumption that a transaction among the cotenants respecting the common property resulted from fraud and undue influence. *Pure Oil Co.* v. *Byrnes*, 388 Ill. 26; *Albrecht* v. *Hunecke*, 196 Ill. 127.

As to actual fraud, Lawrence does little more than assert that he was induced to sign the challenged deeds upon the strength of false representations by Eugene that they would remain partners and that he could continue to occupy the house on the farm. Fraud in the inducement must, ordinarily, be founded upon a misrepresentation of fact, and the mere breaking of a promise or an act contrary to an expression of intention does not constitute fraud or warrant the

rescission of a contract. (*Luttrell* v. *Wyatt,* 305 Ill. 274; *Murphy* v. *Murphy,* 189 Ill. 360.) Where, however, a person never intending to perform makes a false promise as part of a scheme to deprive another of his property, equity will right the wrong by restoring the parties to their former positions. (*Roda* v. *Berko,* 401 Ill. 335; *Luttrell* v. *Wyatt,* 305 Ill. 274.) The alleged misrepresentations being promises, it follows that Lawrence, in order to be entitled to rescind the deeds, had to prove that the representations charged were made; that Eugene never intended to live up to his promises; that Eugene made the promises in order to deprive him of his fair share of the farm, and that Eugene did, in fact, break his promises. Eugene, in effect, concedes that he made the oral expressions of intention ascribed to him, but asserts that, at the time he executed the deeds, he fully intended to continue the partnership and to permit Lawrence to reside in the dwelling on the farm, and that Lawrence was the one who initiated and insisted upon the dissolution of the partnership. In addition, Eugene and his codefendants contend that proof of his oral promises is barred by the parol evidence rule, since the partition deeds constitute the complete contract among the parties, and that, in any event, the promises are so vague and indefinite as to be unenforceable.

The principal question here is Eugene's intention at the time he signed the deeds. Both the master and the chancellor found that all the parties entered into the partition agreement and executed the deeds without fraud and in good faith, and the chancellor further found that Lawrence failed to prove that Eugene possessed an intention to terminate the partnership prior to November 5, 1946, when the deeds were signed, and that Eugene's decision to dissolve the partnership was made subsequent thereto. Despite the importance of these findings, Lawrence does not make any express contention that the findings are contrary to the manifest weight of the evidence and is content

to devote only a few paragraphs of his brief to the argument that Eugene never intended to perform his promises. In apparent recognition of the fact that there is little or no evidence that Eugene intended to discontinue the partnership, Lawrence singles out Eugene's assurance that he could remain on the farm as being an intentional false promise. To show that Eugene's intention was contrary to his promise, Lawrence relies principally upon the contrast between the testimony of Mary Hogan and Eugene that the meetings of the cotenants, initiated by the former in September, 1946, and resulting in the first set of partition deeds, were called for the purpose of devising some way of getting Margaret McDonald off the farm, and Eugene's subsequent promise that he, Lawrence, and inferentially his wife, could continue to occupy the dwelling after the partition. In this connection, it should be observed that Lawrence carefully ignores his own testimony that Mary Hogan called the meetings for the purpose of initiating a judicial partition and sale so that she could convert her interest in the farm into money. Furthermore, the record makes it clear that Mary Hogan and her husband were the moving parties in the partition, that they desired to place Margaret McDonald in a position where she could not continually interfere with the relations between the partners or, in the alternative, to withdraw their interest in the farm from use by the partnership, and that, while Eugene was entirely agreeable to having Margaret McDonald, and inferentially Lawrence, live away from the farm, Mary Hogan was satisfied with a partition whereby she could farm her own tract, and Hanna McDonald, Sarah Hackett and Eugene were agreeable to continuing the old arrangement, provided that the land containing the dwelling and improvements was set off to Eugene so that he could have some measure of control over Margaret McDonald, whom they all thought was trying to ruin the business financially and to break up the partnership. It follows, therefore,

that the apparent contrast between the original purpose of the meetings called by Mary Hogan and the subsequent partition agreement wherein Eugene accepted the tract containing the dwelling and agreed to continue the partnership and to allow Lawrence to occupy the farmhouse fails to show that Eugene, at the time he executed the deeds on November 5, 1946, did not intend to keep his agreement. Upon a review of the entire record, it cannot be said that the finding of the chancellor that the deeds were executed without fraud and in good faith is contrary to the manifest weight of the evidence.

The decree of the circuit court of McLean County is affirmed.

*Decree affirmed.*