# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Stahling*, 2013 IL App (4th) 120271

---

| | |
|---|---|
| Appellate Court Caption | In re: the Estate of MARTIN STAHLING, SR., Deceased, MARTIN STAHLING, JR., Petitioner-Appellee, v. MARTIE KOEHLER, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0271 |
| Filed | April 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In addressing a certified question pursuant to Supreme Court Rule 308, the appellate court responded that the existence of a health care power of attorney does not create a fiduciary relationship which, as a matter of law, raises a presumption of undue influence in the principal's execution of a deed that names the agent under the health care power of attorney as a joint tenant with the principal in a deed, since, by itself, a health care power of attorney does not give the agent authority to manage or control the principal's property. |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 08-P-14; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Certified question answered. |

Counsel on
Appeal

Michael J. McDonald and Anita G. Cooper, both of Cooper & McDonald, of Godfrey, for appellant.

Sandra J. Tatoian, of Mathis, Marifian & Richter, Ltd., of Edwardsville, for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Appleton and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        Respondent, Martie Koehler (Koehler), and petitioner, Martin Stahling, Jr. (Stahling Jr.), are the children of decedent, Martin Stahling, Sr., and the coadministrators of his estate. During probate proceedings, Koehler filed a petition to expend estate funds to investigate decedent's execution of a deed which transferred land to himself and Stahling Jr. as joint tenants with rights of survivorship. The trial court granted the petition and appointed an attorney to investigate the possibility of the estate filing an action to recover the property at issue in the deed. Following that investigation, the court determined retaining special counsel to pursue a claim on behalf of the estate and at the estate's expense was unwarranted. However, on Koehler's motion and pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010), the court certified the following question for review: "Whether the existence of a Health Care Power of Attorney creates a fiduciary relationship which, as a matter of law, raises a presumption of undue influence in the execution of a deed that names the agent under the Health Care Power of Attorney as a joint tenant in the deed." We answer the certified question in the negative.

¶ 2                                    I. BACKGROUND

¶ 3        On September 6, 2005, decedent executed a deed transferring several hundred acres of land to himself and Stahling Jr., as joint tenants with rights of survivorship. On November 7, 2007, decedent died and, on April 14, 2008, his will was admitted to probate. On June 17, 2009, Koehler filed a petition in the probate proceedings to expend estate funds to investigate the possibility of the estate filing an action to recover the property transferred to decedent and Stahling Jr. as joint tenants. She suggested decedent was unduly influenced by Stahling Jr. and alleged, at the time the September 2005 deed was signed, decedent had recently been released from the hospital and was taking numerous prescribed medications. Koehler also asserted her belief that Stahling Jr. was present "at least part of the time" when decedent met with his attorney regarding the preparing and signing of the deed.

¶ 4 On June 26, 2009, the trial court granted Koehler's petition, and on July 14, 2009, it appointed attorney Phil Hamilton to investigate the potential of a legal action by the estate to recover the property. On October 23, 2009, Hamilton filed a report on the matter. He attached affidavits from Stahling Jr.; Stahling Jr.'s wife; George Wittman, the individual who prepared the deed at issue; and Koehler. According to Wittman, decedent was 79 years old at the time the deed at issue was executed. Wittman asserted decedent expressed a clear intent that he wanted the property to go to Stahling Jr. after decedent's death. Hamilton reported "Wittman was familiar with the decedent's health situation and was convinced that the decedent knew what he was doing and understood he was making a gift to his son." Stahling Jr. was present at a meeting between Wittman and decedent when decedent first discussed his intention to transfer the property but Stahling Jr. was not present when decedent ultimately signed the deed. Wittman did not believe decedent was unduly influenced. Stahling Jr. denied attempting to influence decedent regarding what to do with the property and asserted he was surprised decedent wanted to transfer the property.

¶ 5 Koehler related concerns regarding decedent's mental and physical health at the time he signed the deed, noting he suffered a severe beating approximately two months prior, was hospitalized, and underwent heart surgery. Koehler believed Stahling Jr. administered decedent's medication, controlled decedent's affairs, and cared for decedent on a regular basis. She asserted that neither she nor her mother, decedent's live-in companion, had knowledge of the deed prior to decedent's death and that Stahling Jr. was not forthcoming about the deed.

¶ 6 Hamilton determined that, while the information he obtained could "raise at least a question as to whether the decedent was unduly influenced" by Stahling Jr., such information was insufficient to establish a presumption of undue influence. He noted that, without a power of attorney naming Stahling Jr. as decedent's agent, there was no fiduciary relationship as a matter of law and that, otherwise, proof of a fiduciary relationship had to be " 'clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion.' [Citation.]" Hamilton concluded that retaining special counsel to pursue a claim on behalf of the estate and at the estate's expense was unwarranted.

¶ 7 On November 4, 2009, Stahling Jr. filed a petition for court direction, asking the trial court to order that the estate's coadministrators expend no further estate funds pursuing an investigation into the joint tenancy deed or pursuing recovery of the real estate that was the subject of the deed. On November 24, 2009, a hearing was held in the matter and the court ordered that the coadministrators expend no further estate funds pursuing a suit based on recovering the property that was the subject of the joint tenancy deed. However, it noted nothing in its order prohibited Koehler from pursuing the matter at her own expense.

¶ 8 On December 15, 2010, Koehler filed a motion asking the trial court to reconsider its decision. She alleged Hamilton's report was based upon his belief that decedent had not executed a power of attorney naming Stahling Jr. as his agent. However, Koehler asserted a health care power of attorney, signed by decedent and naming Stahling Jr. as decedent's agent, had recently been discovered by Wittman and revealed during his deposition on September 16, 2010. Koehler maintained the health care power of attorney, dated August 26, 2005, would have had a material impact on Hamilton's opinions and the court's ultimate

ruling. Koehler asked that the court authorize Hamilton to reconsider his report based upon the discovery of the health care power of attorney and file an amended report. She requested the court also authorize additional payment to Hamilton out of estate funds and that the court reconsider its previous order.

¶ 9        On February 9, 2011, the trial court ordered additional facts to be presented to Hamilton regarding the health care power of attorney and directing Hamilton to advise the court if such additional facts would alter Hamilton's previous opinion. On February 18, 2011, Hamilton filed a supplemental report. He noted a property power of attorney creates a fiduciary relationship as a matter of law but stated he found no Illinois case holding the same regarding a health care power of attorney. Hamilton determined that the existence of a health care power of attorney "would appear to be some evidence potentially supporting the existence of a fiduciary relationship, but *** standing alone would not meet the burden of establishing the existence of a fiduciary relationship by clear and convincing proof." Hamilton further stated that it did not appear the deed at issue was procured in any way by Stahling Jr. and that "[o]bviously a health care power of attorney would have been no use in handling financial affairs of the decedent." He stated his opinion remained unchanged and retaining special counsel to pursue a claim on behalf of the estate and at the estate's expense was unwarranted.

¶ 10       On April 28, 2011, the trial court entered the following order:

"Supplemental Report prepared by attorney *** Hamilton, court appointed investigator, *** reviewed and considered. Based upon the recommendation of *** Hamilton, as well as the court's review of the case authority cited therein, this court finds that retaining special counsel to pursue a claim on behalf of the estate, at the expense of the estate, is not warranted. This decision, of course, does not foreclose heirs of [decedent's] estate from pursuing such an action at their own expense."

¶ 11       On August 18, 2011, Koehler filed a motion to certify a question to this court pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). On March 14, 2012, the court entered an order certifying the following question for appellate review: "Whether the existence of a Health Care Power of Attorney creates a fiduciary relationship which, as a matter of law, raises a presumption of undue influence in the execution of a deed that names the agent under the Health Care Power of Attorney as a joint tenant in the deed." On April 18, 2012, we allowed an application for leave to appeal pursuant to Rule 308.


¶ 12                                    II. ANALYSIS

¶ 13       Prior to addressing the certified question, we are compelled to note reservations regarding the propriety of an interlocutory appeal under the circumstances presented by this case. Appellate courts "have power to ensure that the authority to pursue interlocutory appeals is not abused." *Voss v. Lincoln Mall Management Co.*, 166 Ill. App. 3d 442, 445, 519 N.E.2d 1056, 1058 (1988). Pursuant to Rule 308(a), this court may, in its discretion, allow appeals from interlocutory orders that are not otherwise appealable. However, such appeals may only be had after findings that (1) "the order involves a question of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308(a) (eff.

-4-

Feb. 26, 2010).

¶ 14    "Appeals under [Rule 308] should be available only in the exceptional case where there are compelling reasons for rendering an early determination of a critical question of law and where a determination of the issue would materially advance the litigation." *Kincaid v. Smith*, 252 Ill. App. 3d 618, 622, 625 N.E.2d 750, 753 (1993). "The rule should be strictly construed and sparingly exercised." *Kincaid*, 252 Ill. App. 3d at 622-23, 625 N.E.2d at 753.

¶ 15    Under the circumstances presented, we question whether an immediate appeal of the trial court's April 28, 2011, ruling materially advances the ultimate termination of the litigation. The certified question relates to presumptions of undue influence in the execution of a deed. However, the order from which Koehler seeks immediate review involved her attempts during probate proceedings to use estate funds to investigate or pursue such a claim. Contrary to Rule 308's requirements, Koehler failed to show how an immediate appeal and resolution of the certified question would materially advance the termination of the underlying probate proceedings. Although we have concerns as to whether this case presents the exceptional circumstances necessary for early review, we note this court allowed Koehler's application for leave to appeal in April 2012, and the matter has been pending on appeal since that date. Given this delay and that the certified question presents a question of law about which there is substantial ground for differences of opinion, we exercise our discretion under Rule 308 and choose to answer the certified question.

¶ 16    As stated, the certified question concerns whether a health care power of attorney creates a fiduciary relationship which, as a matter of law, raises a presumption of undue influence in the execution of a deed. Koehler argues a principal-agent relationship stems from a health care power of attorney and gives rise to a presumption of undue influence in any transaction between the principal and agent. She notes case law providing that a property power of attorney establishes a fiduciary relationship as a matter of law and results in a presumption of undue influence. Although Koehler acknowledges no Illinois case holds the same with respect to a health care power of attorney, she points out that neither is there a case that holds the contrary position. Further, she cites case law and portions of the Powers of Attorney for Health Care Law (755 ILCS 45/4-1 to 4-12 (West 2004)) to support her position that the relationship between the principal and agent to a health care power of attorney is one involving trust and confidence which must give rise to a presumption of undue influence in transactions between the parties.

¶ 17    Conversely, Stahling Jr. argues a health care power of attorney does not create a fiduciary relationship where there has been no evidence of acceptance by the agent of duties delegated pursuant to the power. Additionally, he contends that, even when a fiduciary relationship exists as the result of a health care power of attorney, that relationship extends only to health care matters within the scope of the power of attorney. Thus, Stahling Jr. argues a health care power of attorney cannot create a presumption of undue influence in property transactions between the power's principal and agent. We agree with Stahling Jr.

¶ 18    Generally, a presumption of fraud or undue influence exists "where there is a fiduciary relationship between the parties and the fiduciary has benefitted by virtue of his fiduciary status." *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088, 677 N.E.2d 1024, 1029

(1997). "A confidential or fiduciary relationship exists in all cases where trust and confidence are reposed in another who thereby gains a resulting influence and superiority." *Apple v. Apple*, 407 Ill. 464, 468-69, 95 N.E.2d 334, 337 (1950). Fiduciary relationships may be shown to exist either as a matter of law or as a matter of fact. *In re Estate of Long*, 311 Ill. App. 3d 959, 963, 726 N.E.2d 187, 190 (2000). A fiduciary relationship "may exist as a matter of law between partners, joint adventurers, trustee and beneficiary, guardian and ward, attorney and client, and principal and agent." *Carroll v. Caldwell*, 12 Ill. 2d 487, 495, 147 N.E.2d 69, 73 (1957). "Where the alleged relation does not exist as a matter of law, it must be proved by clear and convincing evidence." *Apple*, 407 Ill. at 469, 95 N.E.2d at 337.

¶ 19    The parties each note several cases for the proposition that a power of attorney creates a fiduciary relationship as a matter of law. See *DeJarnette*, 286 Ill. App. 3d at 1088, 677 N.E.2d at 1029; *In re Estate of Miller*, 334 Ill. App. 3d 692, 697, 778 N.E.2d 262, 266 (2002); *In re Estate of Rybolt*, 258 Ill. App. 3d 886, 889, 631 N.E.2d 792, 795 (1994); *White v. Raines*, 215 Ill. App. 3d 49, 59, 574 N.E.2d 272, 279 (1991); *Lemp v. Hauptmann*, 170 Ill. App. 3d 753, 757, 525 N.E.2d 203, 205 (1988). However, as the parties also note, relevant case law concerns only powers of attorney dealing with property and financial matters and their effect on property and financial transactions between the parties. Case law does not similarly address the issue presented by this case as to whether a health care power of attorney, alone, can create a presumption of undue influence in property and financial transactions between the power's principal and agent.

¶ 20    In this case, decedent executed a statutory short form power of attorney for health care pursuant to section 4-10 of the Powers of Attorney for Health Care Law (755 ILCS 45/4-10 (West 2004)) and appointed Stahling Jr. as his agent. The power of attorney authorized Stahling Jr. to make health care decisions on decedent's behalf. Generally, we agree that an individual may create a health care power of attorney that results in a principal-agent relationship which, in turn, may create a fiduciary relationship. Specifically, the Power of Attorney for Health Care Law provides that its purpose is to ensure that, an "individual, as *principal*, can delegate *** decision making power to a trusted *agent* and be sure that the *agent's* power to make personal and health care decisions for the *principal* will be effective to the same extent as though made by the *principal*." (Emphases added.) 755 ILCS 45/4-1 (West 2004). As stated, a principal-agent relationship creates a fiduciary relationship.

¶ 21    However, "to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party." *Hensler v. Busey Bank*, 231 Ill. App. 3d 920, 928, 596 N.E.2d 1269, 1275 (1992). Although "[t]he statutory short form power of attorney for health care *** authorizes the agent to make any and all health care decisions on behalf of the principal which the principal could make if present and under no disability," the named agent is "under no duty to exercise granted powers or to assume control of or responsibility for the principal's health care." 755 ILCS 45/4-10(b) (West 2004). The face of the document does not require the agent's signature (755 ILCS 45/4-10(a) (West 2004)) and it is only upon exercising granted powers that the agent is "required to use due care to act for the benefit of the principal in accordance with the terms of the statutory health care power" (755 ILCS 45/4-10(b) (West 2004)).

¶ 22    To create a fiduciary relationship, an agent must accept the powers delegated by the

-6-

principal. The execution of a statutory short form power of attorney, alone and without evidence of acceptance by the named agent, is insufficient to create a fiduciary relationship between the principal and that agent. In each of the cases Koehler relies upon, evidence demonstrated the agent's acceptance of a fiduciary relationship by showing his or her performance of acts authorized under the property powers of attorney. Mere execution of the statutory short form power of attorney for health care by a principal does not similarly demonstrate an agent's acceptance. In the case at bar, Stahling Jr. claimed he was unaware that decedent had executed the statutory short form and the record failed to show he ever exercised any authority under the health care power of attorney. Under such circumstances, there was no acceptance of the agency relationship and, as a result, no fiduciary relationship.

¶ 23    We further agree with Stahling Jr. that, even when a health care power of attorney creates a fiduciary relationship between individuals, that relationship does not extend to matters outside the scope of the power of attorney. Moreover, a health care power of attorney, by itself, does not create a presumption of undue influence in property or financial transactions between the power's principal and agent.

¶ 24    In *McDonald v. McDonald*, 408 Ill. 388, 394, 97 N.E.2d 336, 339 (1951), the supreme court held that "where a conveyance arises outside the scope of a fiduciary relation shown to exist only as a matter of law, there is no presumption that the transaction resulted from undue influence." In that case, the plaintiff brought an action against his brother and three sisters to set aside five deeds effecting the partition of a farm on the basis of fraud. *McDonald*, 408 Ill. at 389, 97 N.E.2d at 337. The plaintiff argued that, because he and his brother had been partners in a farming operation, his brother "occupied the position of fiduciary" and, as a result, the challenged transaction was presumptively fraudulent. *McDonald*, 408 Ill. at 393, 97 N.E.2d at 339. The court acknowledged that, where a conveyance arises out of a fiduciary relationship, benefitting parties were required to show that the transaction was fair and equitable. *McDonald*, 408 Ill. at 394, 97 N.E.2d at 339. However, it concluded "the partnership relation [did] not extend to all affairs and transactions between partners, and a conveyance outside the relationship [was] not presumptively fraudulent." *McDonald*, 408 Ill. at 394, 97 N.E.2d at 339.

¶ 25    The parties agree that no Illinois case specifically addresses whether a health care power of attorney results in a presumption of fraud or undue influence in property or financial transactions. However, Stahling Jr. cites *In re Sechrest*, 537 S.E.2d 511, 517 (N.C. Ct. App. 2000), a North Carolina Court of Appeals case, for the proposition that "an agent is a fiduciary only pertaining to matters within the scope of his agency." In that case, the court held that because a health care power of attorney dealt exclusively with medical decisions, it did not create a fiduciary relationship between the power's named agent and its principal concerning the principal's will. *Sechrest*, 537 S.E.2d at 517.

¶ 26    *Sechrest* is consistent with our supreme court's decision in *McDonald* and both are relevant to the issue presented here. Although a health care power of attorney may create a fiduciary relationship between the power's principal and agent, the scope of that relationship is limited solely to matters involving the principal's health care. The agent under a health care power of attorney would have no authority to manage or control the principal's property or financial matters. In accord with *McDonald*, we find a health care power of attorney, *by*

*itself*, does not result in a presumption of undue influence between the power's principal and agent in transactions involving property or financial matters.

## III. CONCLUSION

For the reasons stated, we answer the trial court's certified question in the negative.

Certified question answered.