IN THE MATTER OF: THE WILL OF MATTIE T. RIDGE, DECEASED

No. 49

(Filed 4 March 1981)

Attorneys at Law § 7.5— caveat proceeding — fees awarded caveators' counsel

There is no statutory or case law requirement that a specific finding be made in a caveat proceeding that the case has substantial merit before attorneys' fees may be awarded to caveator's counsel; furthermore, there was no merit to propounders' contention that the caveat had no merit at all and that the court abused its discretion in allowing counsel fees and costs for caveators to be paid from the estate, since evidence of the highly dependent condition of testatrix combined with the fiduciary relationship between her and her niece, one of the propounders, the niece's part in preparing and presiding over the execution of three codicils, and the niece's ever increasing share of the estate as each codicil was signed raised at least a strong suspicion of the exercise of undue influence, it appeared in the best interest of the estate that this cloud be removed and that the will be probated in solemn form, and there was therefore ample evidence to support the trial judge's finding of fact that the action of the caveators in initiating the proceeding was apt and proper and their claim was reasonable, made in good faith, and *prima facie* in the interest of the estate.

ON petition for discretionary review pursuant to G.S. 7A-31 filed by caveators of the will of Mattie T. Ridge, deceased, from a decision of the Court of Appeals reported in 47 N.C. App. 183, 266 S.E. 2d 766 (1980), vacating an order of *Graham, Judge*, entered at the 27 June 1,979 Session of Superior Court, GUILFORD County, allowing attorneys' fees for caveators' counsel and costs from the estate and remanding the cause to the Superior Court of GUILFORD County for further hearing. Caveators' petition for discretionary

review was allowed on 16 September 1980. This case was docketed in the Fall Term 1980 as Case No. 130 but argued in the Spring Term 1981 as Case No. 49.

*Edwards, Greeson, Weeks & Turner, by Elton Edwards, for caveators-appellants.*

*Wyatt, Early, Harris, Wheeler & Hauser, by William E. Wheeler, for propounders-appellees.*

MEYER, Justice.

Mrs. Mattie T. Ridge died testate in High Point, Guilford County, North Carolina, on 28 November 1978 at the age of 85. On 7 December 1978, Virginia T. Jackson, a niece of Mrs. Ridge, presented decedent's will and three attached codicils to the Clerk of Superior Court of Guilford County for probate. The original will, dated 28 May 1970, and three codicils, dated 13 May 1974 (hereinafter referred to as first codicil), 22 November 1974 (hereinafter referred to as second codicil), and 16 October 1975 (hereinafter referred to as third codicil), were admitted to probate in common form as together constituting decedent's last will and testament.

The original will, executed when the testatrix was 76 years old, in general provided for conventional disposition of testatrix's property: specific bequests to her husband, a niece, a church, and a brother, with the residue to be divided one-fifth to her husband, one-fifth to each of her two living brothers, and one-fifth to children of each of her two deceased brothers and named a brother as executor. The first and second codicils were executed when testatrix was 81 years old and the third codicil when she was 82 years old. These codicils substantially changed the distribution of her estate. The first codicil, among other things, included a specific bequest to Virginia Jackson of $5,000. The second codicil, among other things, designated the share of a deceased brother, Alson Thayer (the caveators' father, who had died since the execution of the will), to nieces and nephews other than Alson Thayer's children, thereby increasing the share of the estate bequeathed to Virginia Jackson. Virginia Jackson was also named as executrix. The third codicil increased the bequests to several people including Virginia Jackson.

After the will was probated in common form, Virginia Jackson qualified and undertook the administration of decedent's estate.

On 19 January 1979, Lucy Thayer Koontz, Faye Thayer Kilgore and Marie Thayer McFarlan, the three children of Alson M. Thayer, the brother of decedent who was named in the original will but whose name had been stricken from the will by the second codicil, filed a caveat to the will as probated. The original will was not questioned. The caveat alleged the invalidity of the three codicils attached to the will and asserted that at the time testatrix executed each of the codicils, she lacked testamentary capacity to do so; that undue influence was exerted upon testatrix at the time each codicil was executed; and that decedent was mistaken as to the nature, contents or identity of each of the three codicils.

On 14 May 1979, caveators withdrew their allegation as to the invalidity of the three codicils on the ground of lack of testamentary capacity.

The matter came on for trial at the 25 June 1979 Special Session of the General Court of Justice, Superior Court Division, High Point, North Carolina, before Judge William T. Graham. At the trial of the case, caveators (having previously waived their allegation of lack of testamentary capacity) waived their allegation as to the invalidity of the three codicils on the ground of mistake, leaving only the allegation of undue influence.

At the close of caveators' evidence, the propounders moved for a peremptory instruction on all issues. Caveators stipulated that the third codicil was properly executed and did not resist a peremptory instruction on that issue. The court allowed propounders' motion for peremptory instruction and submitted to the jury only the issue of *devisavit vel non*. The jury returned a verdict in favor of the propounders, and thereafter judgment was entered by Judge Graham admitting the four instruments to probate in solemn form as decedent's last will and testament.

Caveators gave notice of appeal and asked to be heard with respect to counsel fees. Counsel for propounders asked to be heard on the propriety of any award whatsoever of counsel fees for caveators. The court heard argument for propounders and caveators and, finding that the action was brought in good faith, held that caveators as well as propounders were entitled to have their legal fees paid out of the estate. The court then instructed counsel to have time sheets and appropriate orders prepared in accordance with G.S. 6-21(2), leaving the amount blank. On the following day, caveators

presented time records and other information supporting legal services rendered on their behalf in affidavit form together with proposed orders for attorneys' fees and costs as requested by the court. The court, after hearing evidence of both propounders and caveators as to the fees and costs, awarded propounders $13,000 in attorneys' fees and certain costs and awarded caveators $7,500 in attorneys' fees, all to be paid from the estate. The following day, the court signed a separate order for caveators' costs and for refunding the $200 cash bond which had been filed when the action was instituted. Propounders appealed from the order contending that the trial court erred in awarding attorneys' fees and costs to caveators both as a matter of law and as an abuse of discretion. Caveators subsequently, on 20 August 1979, filed a stipulation of dismissal of their appeal and by proper order it was dismissed. Propounders appealed from the order of Judge Graham awarding caveators' counsel fees and costs from the estate. The Court of Appeals, in an opinion filed 3 June 1980, vacated Judge Graham's order and remanded the case to the Superior Court of Guilford County for another hearing to determine the propriety of awarding caveators' attorneys' fees and, if found proper, the amount of such fees.

All parties agree that resolution of this cause is governed by G.S. 6-21:

> *Costs allowed either party or apportioned in discretion of court.*—Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:
>
> . . . .
>
> (2) Caveats to wills and any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and duties of parties thereunder; provided, however, that in any caveat proceeding under this subdivision, if the court finds that the proceeding is without substantial merit, the court may disallow attorneys' fees for the attorneys for the caveators.
>
> . . . .
>
> The word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys'

In re Ridge

fees in such amounts as the court shall in its discretion determine and allow: . . . .

In the decision of the Court of Appeals, we find the following:

In its order for counsel fees the trial court made no finding or conclusion with respect to whether the proceeding was without substantial merit. Under the evidence in this case, without such a finding we cannot determine whether the trial court properly exercised its discretion in awarding the counsel fees.

For this reason, the order allowing attorneys' fees for caveators' counsel and costs must be vacated and the cause remanded to the Superior Court of Guilford County for another hearing to determine the propriety of awarding attorneys' fees to counsel for caveators and, if found proper, the amount of such fees.

The clear implication of this portion of the decision is that the trial judge is required to make a specific finding with respect to whether the proceeding was "without 'substantial merit.'" In their briefs and in oral argument before this Court, appellees conceded that the Court of Appeals erred in remanding the case to the Superior Court for findings with regard to the propriety of awarding counsel fees and costs to caveators and the amount thereof. We agree. We fail to find any statutory *requirement* that a specific finding as to whether or not the case was without substantial merit be made, nor do we find that our case law establishes such a requirement. By the plain language of the statute the words "if the court finds" renders the proviso with respect to a finding that the case is without merit subjunctive, and the word "may" renders it permissive even in a case where this proviso applies. The phrase "if the court finds" clearly contemplates a contingency, the contingency being that the court might in some cases make a finding that a case was without substantial merit. Only in the event of that contingency does the proviso apply, and then the word "may" renders it permissive even in that event. Appellees strenuously contend, however, that the caveat had no merit at all and that the court abused its discretion in allowing counsel fees and costs for caveators to be paid from the estate. Therefore, argue appellees, Judge Graham's order awarding costs and attorneys' fees to caveators should be set aside.

Ordinarily, attorneys' fees are taxable as costs only when expressly authorized by statute. *Horner v. Chamber of Commerce,* 236 N.C. 96, 72 S.E. 2d 21 (1952). G.S. 6-21 specifically authorizes the trial court in its discretion to allow attorneys' fees to counsel for unsuccessful caveators to a will. *In re Coffield's Will,* 216 N.C. 285, 4 S.E. 2d 870 (1939); *In re Will of Slade,* 214 N.C. 361, 199 S.E. 2d 290 (1938) (both cases construing the predecessor to G.S. 6-21). The statute does not *require* the court to award attorneys' fees in such cases but clearly *authorizes* the court to do so. It is a matter in the discretion of the court, both as to whether to allow fees and the amount of such fees. *Godwin v. Trust Company,* 259 N.C. 520, 131 S.E. 2d 456 (1963). The findings of the trial judge are conclusive on appeal if there is competent evidence in the record to support them. *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968), *see* Strongs, 1 N.C. Index 3rd, Appeal and Error § 57.2. This is true even though there may be evidence in the record which could sustain findings to the contrary. *Id.* We must therefore determine whether the trial judge's award of caveators' attorneys' fees and costs from the estate constituted an abuse of discretion. In order to make that determination we must first consider whether there is competent evidence in the record before us to support the findings and conclusion of the trial judge.

The Court of Appeals found that the evidence in the case in the trial court strongly supported the propounders' argument that the caveat had no merit at all: that caveators, before trial, abandoned their claims of lack of testamentary capacity and mistake on the part of the testatrix, and that on the remaining issue of undue influence, the record is absolutely void of any evidence to substantiate such claim.

In his order of 27 June 1979 allowing caveators' attorneys' fees and directing that they be taxed against the estate, Judge Graham made the following findings of fact and conclusion:

> 1. The action of Caveators in initiating this proceeding was apt and proper, and their claim was reasonable, made in good faith and *prima facie* in the interest of the estate.
>
> 2. Upon an affidavit submitted by counsel for the Caveators, which is attached hereto, and statements of such counsel, and upon consideration of the rec-

> ord in this action and of the nature and complexity of the action, the Court finds that the sum of $7500.00 is a fair and reasonable attorney's fee for counsel of the Caveators;

> Upon such findings, the Court, in the exercise of its discretion, concludes that the Caveators should be awarded their costs, including a reasonable attorney's fee ; . . . .

"Apt" and "proper" both mean that which is fit, suitable and appropriate. Black's Law Dictionary, 94, 1094 (5th Ed. 1979). "Good faith" means honesty of intention, and freedom from knowlege of circumstances which ought to put the holder upon inquiry. *Id.* at 623-24. "*Prima facie*" means at first sight, on the first appearance, on the face of it, so far as can be adjudged from the first disclosure. *Id.* at 1071. Therefore, "*prima facie* in the best interest of the estate" means on first appearance in the best interest of the estate.

As to the amount of the fees awarded, Judge Graham properly considered the affidavit and statements of counsel for caveators, the record in the proceeding, and the nature and complexity of the caveat proceeding. While the record does not contain a copy of the caveators' counsel's affidavits, we note in the briefs submitted to this Court by the propounders that the caveators' counsel's affidavit showed the number of hours expended by caveators' counsel, the length of time the attorney had practiced law, his usual charges for litigation, and his opinion of the customary charges for litigation in Guilford County.

We note in the record of the exchange between counsel and Judge Graham concerning whether or not counsel fees and costs should be awarded the caveators, which followed immediately the taking of the verdict, that Judge Graham stated, "Well, I think it is in good faith. It is . . . not obviously the strongest case, but I think it was brought in good faith . . . I think that the caveators are entitled to have their legal fees paid out of the estate as are the propounders." On the following day, in a hearing on proposed attorneys' fees for both parties, the judge, after allowing certain costs and disallowing others, stated:

> As to the case in general, I don't know when I have tried a case that counsel have been as well prepared for as they were in this case. Counsel for propounders was especially well prepared in this matter and was prepared for just

about any eventuality that could have occurred in this case. Caveators' counsel were also prepared . . . .

On the caveator's side, the caveator was fully prepared for the case and the case appeared to the Court to have merit. As it went along it obviously did not have as much merit as it could have had.

We note that the propounders' counsel were awarded the amount of $13,000. We find ample competent evidence in the record before us to support the trial judge's finding that the sum of $7,500 was a fair and reasonable fee for counsel of the caveators.

In 1 Wiggins, Wills and Administration of Estates in North Carolina § 55, a number of different circumstances are said to be indicia of undue influence: (1) that the testator was of advanced age and subject to physical and mental weakness; (2) that the testator was in the home of the beneficiary, subject to his constant supervision, and others had little or no opportunity to see him; (3) that there is a variance of testamentary dispositions with the testator's intentions as expressed in a prior will; (4) that the provisions of the will were unnatural; i.e., the testator disinherited the natural objects of his bounty; and (5) that the chief beneficiaries of the will were active in procuring the execution of the will. Dr. Wiggins further notes that the leniency in allowing a wide range of testimony on the issue of undue influence is due to the fact that undue influence has to be shown by circumstantial evidence. *Id.* § 56.

Evidence in the record before us with regard to the foregoing circumstances cited by Wiggins includes the following:

1. The testatrix was 76 years old when she executed her original will but was 81 years old when the first two codicils were executed and 82 years old when the last codicil was executed. She could no longer sign her name and she was crippled from severe rheumatoid arthritis, blind, and steroid dependent. She had been on medication since 1956 and was chair-ridden and had to be fed by others.

2. The testatrix was dependent upon a housekeeper to attend to her physical needs until she went to a nursing home, and upon a niece, Virginia Jackson, to handle her financial affairs, particularly after giving Virginia Jackson a power of attorney.

In re Ridge

3 and 4. Testatrix's original will provided for a natural distribution of her estate by making provisions for two living brothers and the children of two deceased brothers. The second codicil, which was written after the testatrix's brother, Alson Thayer (caveators' father) died, did not make provision for Alson's three children as the testatrix had done for her other two deceased brothers' children; instead, the share of the estate Alson Thayer would have taken was designated for the children of testatrix's two other deceased brothers. Evidence from at least two witnesses at the trial indicated that the testatrix showed equal affection for all nieces and nephews as well as other members of her family. Each codicil resulted in her niece, Virginia Jackson, receiving a larger portion of the estate.

5. While the original will was prepared by an attorney and maintained by him in a lockbox, the three codicils were prepared by the niece, Virginia Jackson, who was present at the execution of each codicil. The testatrix's attorney testified that he knew only about the first codicil. The first time the third codicil came to light was when Virginia Jackson produced it from her briefcase in the testatrix's attorney's office the day after the funeral, gave it to him and said, "I know you said no more codicils." There was also evidence that Virginia Jackson, following the funeral, told a number of members of the family that she could not permit the testatrix to give $10,000 to Christ United Methodist Church and continue to give money to various other recipients.

In *In re Will of Amelia Everett,* 153 N.C. 83, 68 S.E. 924 (1910), this Court said:

> [W]hen a will is executed through the intervention of a person occupying a confidential relation towards the testatrix, whereby such person is the executor and a large beneficiary under the will, such circumstances create a strong suspicion that an undue or fraudulent influence has been exerted, and then the law casts upon him the burden of removing the suspicion by offering proof that the will was the free and voluntary act of the testator.

*Id.* at 85, 68 S.E. at 925; *see also McNeill v. McNeill,* 223 N.C. 178, 25 S.E. 2d 615 (1943).

The caveators contend that the highly dependent condition of

the testatrix combined with the fiduciary relationship between her and Virginia Jackson, the latter's part in preparing and presiding over the execution of the codicils, and her ever-increasing share of the estate as each codicil was signed, raised at least a strong suspicion of the exercise of undue influence. We agree. Further, with this strong suspicion present, it appeared at least *prima facie* in the best interest of the estate that this cloud be removed and that the will be probated in solemn form. We therefore hold that there was ample evidence to support Judge Graham's finding of fact that the action of the caveators in initiating the proceeding was apt and proper and that their claim was reasonable, made in good faith and *prima facie* in the interest of the estate.

Having found ample competent evidence in the record before us to support the findings and conclusion of the trial judge, we conclude that there was no abuse of discretion on his part in the allowance of caveators' attorneys' fees and costs to be paid from the estate or the amounts thereof.

We do not deem *In re Moore*, 292 N.C. 58, 231 S.E. 2d 849 (1977), relied upon by the propounders, apposite here. In that case, this Court held that G.S. 6-21(2) does not authorize the awarding of costs and attorneys' fees to an individual in pressing his claim for appointment as executor under a will when such individual is disqualified as a matter of law from serving as executor. We note, however, that even there, attorneys' fees were allowed for other activities of the same individual.

We have carefully considered all other assignments of error brought forward by the propounders and find them to be without merit.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further remand to the Superior Court of Guilford County for reinstatement of Judge Graham's orders of 27 June 1979 and 28 June 1979 awarding attorneys' fees and costs to caveators to be paid from the estate.

Reversed and remanded.