In the Matter of the PURPORTED LAST WILL and TESTAMENT of
DORIS S. SECHREST, Deceased

No. COA99-624

(Filed 7 November 2000)

**1. Wills— caveat—undue influence—no fiduciary duty between testatrix and propounder**

The trial court did not err in a will caveat proceeding by directing a verdict for propounders of the May 1994 will on the issue of the executor of the estate/propounder's undue influence on testatrix, because: (1) testatrix stated to her attorney the day after her husband's death that she wanted to exclude caveators from her will based on the fact that her husband already took care of caveators with a $200,000 educational trust, and the propounder had little contact with testatrix prior to her husband's death; (2) the propounder is not a beneficiary under the May 1994 will and stands to receive $300,000 less from the annuities than he would have under the prior 16 February 1994 bequest; (3) it is implausible that the propounder overcame testatrix's will and caused her to include a particular tax provision in the May 1994 will when her prior wills contain similar tax provisions; and (4) the propounder did not have a fiduciary relationship with testatrix so as to shift the burden on him to prove that any transaction enuring to his benefit was untainted by fraud when the health care power of attorney designating the propounder as testatrix's health care agent dealt exclusively with medical decisions, the general power of attorney was executed contemporaneously with the 16 February 1994 will devising one-half of testatrix's estate to the propounder, and the record does not contain any evidence as to when the propounder learned of his appointment as testatrix's attorney-in-fact.

**2. Wills— caveat—testamentary capacity**

The trial court did not err in a will caveat proceeding by directing a verdict for propounders of the May 1994 will on the issue of testatrix's testamentary capacity to make and execute a will, because: (1) the evidence reveals that testatrix knew the natural objects of her bounty when she explained to her attorney that she did not want to leave caveators anything based on the fact that her deceased husband already provided for them by setting up an educational trust; (2) even though caveators showed

evidence that testatrix was almost always drunk and that she once made mathematical errors in calculating an employee's paycheck, caveators did not put forth evidence that at or near the time testatrix executed the May 1994 will, she was mentally unequipped to do so; (3) testatrix's attorney testified that during the time between the death of testatrix's husband and the execution of her May 1994 will, there was no cause to believe that testatrix lacked the requisite capacity to execute a will; and (4) the trial court further observed that even a lunatic can make a valid will when the person is in a lucid moment.

**3. Costs— attorney fees—will caveat—no abuse of discretion**

The trial court did not abuse its discretion in a will caveat proceeding by awarding costs, including attorney fees, to propounders of a will under N.C.G.S. § 6-21.

Appeal by caveators from judgment and order entered 10 August 1998 by Judge H. W. Zimmerman, Jr. and from order entered 8 December 1998 by Judge Julius A. Rousseau, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 27 March 2000.

*Adams Kleemeier Hagan Hannah & Fouts, PLLC, by Amiel J. Rossabi and Edward L. Bleynat, Jr., for caveators-appellants.*

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by Tyrus V. Dahl, Jr. and Jack M. Strauch, for propounder-appellee G. Jack Mowery.*

TIMMONS-GOODSON, Judge.

This appeal arises out of a will caveat proceeding challenging a writing dated 17 May 1994 purporting to be the "Last Will and Testament of Doris S. Sechrest" ("the May 1994 Will" or "the Will"). Caveators seek to set aside the Will on the grounds that it was the product of undue influence or, in the alternative, mental incapacity. The pertinent factual and procedural history is summarized as follows.

Doris Sechrest ("testatrix") died on 21 June 1994. On 29 June 1994, G. Jack Mowery ("Mowery" or "propounder") presented the May 1994 Will for probate to the Clerk of Superior Court, Guilford County. Under the Will, testatrix bequeathed her entire legacy in equal shares to Kevin A. Sechrest, her nephew by marriage, and to William R. Bane, III, Walter Stanley Bane, Frances Rebecca Bane, and

Faviona Bane ("the Banes"), her nearest blood relatives. Testatrix appointed Mowery to serve as the executor of the estate, and she directed that all taxes assessed on property passing under or outside of the Will be paid out of her legacy.

On 21 August 1996, Thomas D. Wilson, testatrix's grandnephew by marriage, filed a caveat to the May 1994 Will claiming that the instrument had been procured through Mowery's undue influence upon testatrix and that testatrix lacked the requisite mental capacity to make and execute a will. By consent order dated 22 May 1997, Thomas Wilson's siblings, Kirsten Wilson Jones, Heather E. Wilson, and Ashley Wilson united with Thomas as caveators to the May 1994 Will. Kevin Sechrest, although a beneficiary under the Will, also joined with caveators. The Banes aligned with Mowery as propounders of the disposition.

The matter came on for trial before Judge H. W. Zimmerman, Jr. at the 27 April 1998 Civil Session of Superior Court, Guilford County. Caveators presented their case, which tended to show that testatrix was the widow of Harold Sechrest ("Harold" or "Mr. Sechrest"), who died on 5 February 1994. The Sechrests had no children of their own, but they acted as surrogate parents to their niece and nephew, Kevin and Judi Sechrest, the children of Harold's brother. Judi's children— Thomas, Kirsten, Heather, and Ashley ("the Wilsons")—came to know the Sechrests as their "grandparents," and the Sechrests, in turn, treated the Wilsons like their "grandchildren." The Sechrests gave generously to the Wilsons and provided for their future by naming them as beneficiaries of a $200,000 educational trust. The Wilsons have already received distributions from the trust approximating $240,000. Roughly $77,000 currently remains in trust and will be paid out to the beneficiaries when the trust terminates.

Caveators' evidence further showed that Mowery had been an employee of Mr. Sechrest's business, High Point Face Veneer, for over thirty years. In addition to his administrative duties, Mowery acted as a personal assistant to Mr. Sechrest—picking up his cleaning, opening his mail, paying his bills, and balancing his checkbook. Mowery continued working for Mr. Sechrest in this capacity after the business was sold in 1986. Harold placed considerable trust in Mowery and, in 1992, directed his attorney, Hugh Bennett, who was also Mowery's attorney, to prepare health care powers of attorney for him and testatrix naming Mowery as their health care attorney-in-fact. Shortly thereafter, Harold was diagnosed with pancreatic cancer. He died on 5 February 1994.

## IN RE WILL OF SECHREST

[140 N.C. App. 464 (2000)]

On 10 February 1994, testatrix renounced her right to administer Harold's estate and nominated Mowery to serve as the executor of Harold's will. On that same day, testatrix met with Mr. Bennett and instructed him to draw up a durable power of attorney naming Mowery as her general attorney-in-fact. She also informed Bennett that she desired to change her will and directed him to draft an instrument bestowing one-half of her residuary estate on Mowery. She wanted to leave the other half to Kevin Sechrest and the Banes. Testatrix executed the durable power of attorney and the will on 16 February 1994. This will revoked a prior will, dated 12 August 1988 as amended by codicil dated 2 September 1992, devising testatrix's entire estate to the Wilsons, the Banes, and Kevin Sechrest. Mowery testified that when he learned of the disposition under the February Will, he advised testatrix to "take [him] out" of the will, or "[she would] never get [her] estate settled."

Thereafter, testatrix contacted Mowery's son-in-law, Ben Miller, a securities broker, and explained that she wanted to change the beneficiary of Harold's annuities, which were worth $1.4 million. On 14 March 1994, Miller brought the forms to testatrix, and she executed the change, thereby naming Mowery as the new beneficiary. Mowery notarized the forms. Testatrix then called Mr. Bennett and instructed him to remove Mowery as a beneficiary under her will. The new instrument, executed 16 May 1994, distributed the entire residuary estate in equal shares to Kevin Sechrest and the Banes. The Will named Mowery as the executor and provided that the residuary estate carry the tax burden for all properties passing under or outside of the devise.

Caveators' evidence further tended to show that after Harold's death, testatrix came to depend heavily on Mowery to handle her personal and legal affairs. Mowery brought testatrix breakfast every morning, and while they ate, they would sort through her mail. Additionally, Mowery paid bills for testatrix, handled her banking transactions, and ran a variety of personal errands for her, i.e., taking her to the beauty shop and the pharmacy. Mowery testified that he went to testatrix's home at least three times a day to make sure that she had eaten and "to see that everything was okay."

Caveators also presented evidence that testatrix had what they described as a "severe drinking problem" and that she was twice hospitalized for alcohol-related illnesses. According to her hospital records, testatrix "[drank] at least ½ pint of Vodka a day . . . with some brief periods of abstinence." The records further indicated that testa-

trix's alcoholism resulted in "an overall deteriorated level of functioning and some memory problems." Her psychiatric evaluation "showed mild alcohol related dementia," but found that it was "not overall debilitating."

At the close of caveators' evidence, the trial judge allowed propounders' motion for directed verdict on the issues of undue influence and testamentary capacity. Both parties moved to recover costs and attorneys' fees, and by order entered 10 August 1998, the trial court dismissed caveators' action and taxed costs, including attorneys' fees, to caveators. On 24 August 1998, caveators filed motions for a new trial and for relief from the judgment taxing costs against them. The trial court heard arguments on caveators' motions and entered an order denying the motions on 8 December 1998. Caveators filed notice of appeal.

---

[1] Caveators argue first that the trial court erred in directing a verdict for propounders on the issue of undue influence. Caveators contend that they presented sufficient evidence to create a question for the jury as to whether Mowery unduly influenced testatrix to make the disposition reflected in the May 1994 Will. We must disagree.

A motion for directed verdict challenges whether the evidence is legally sufficient to present a question for the jury and to support a verdict in favor of the non-moving party. *In re Will of Buck*, 130 N.C. App. 408, 410, 503 S.E.2d 126, 129 (1998), *aff'd*, 350 N.C. 621, 516 S.E.2d 858 (1999). In ruling on a motion for directed verdict, the trial court has a duty to examine the evidence in the light most favorable to the non-movant. *Id.* Thus, the the non-movant is given the benefit of all helpful inferences reasonably drawn from the evidence, and all conflicts and contradictions in the evidence are decided in the non-movant's favor. *Id.* Evidence of the non-movant " 'which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. . . . If, however, non-movant shows more than a scintilla of evidence, the court must deny the motion.' " *Ellis v. Vespoint*, 102 N.C. App. 739, 743-44, 403 S.E.2d 542, 545 (1991) (quoting *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (citations omitted)).

In the context of a will caveat, "[u]ndue influence is more than mere persuasion, because a person may be influenced to do an act which is nevertheless his voluntary action." *Buck*, 130 N.C. App. at 413, 503 S.E.2d at 130. The influence necessary to nullify a testamen-

tary instrument is the " 'fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result.' " *In re Will of Dunn*, 129 N.C. App. 321, 328, 500 S.E.2d 99, 103-04 (quoting *Griffin v. Baucom*, 74 N.C. App. 282, 286, 328 S.E.2d 38, 41, *disc. review denied*, 314 N.C. 115, 332 S.E.2d 481 (1985) (quotation omitted)), *disc. review denied and review dismissed*, 348 N.C. 693, 511 S.E.2d 645 (1998). Because direct evidence of undue influence is rarely available, our courts look to the "surrounding facts and circumstances, which standing alone would have little importance, but when taken together would permit the inference that, at the time the testat[rix] executed [her] last will and testament, [her] own wishes and free will had been overcome by another." *Buck*, 130 N.C. App. at 413, 503 S.E.2d at 130.

" 'There are four general elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert influence; (3) a disposition to exert influence; and (4) a result indicating undue influence.' " *Dunn*, 129 N.C. App. at 328, 500 S.E.2d at 104 (quoting *Griffin*, 74 N.C. App. at 286, 328 S.E.2d at 41). Factors relevant to the issue of undue influence include:

"1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see [her].

4. That the will is different from and revokes a prior will.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of [her] bounty.

7. That the beneficiary has procured its execution."

*In re Andrews*, 299 N.C. 52, 55, 261 S.E.2d 198, 200 (1980) (quoting *In re Will of Mueller*, 170 N.C. 28, 30, 86 S.E. 719, 720 (1915)).

Taken in the light most favorable to caveators, the evidence demonstrated (1) that testatrix was seventy years of age and suffered from mild alcohol-related dementia; (2) that Mowery visited testatrix's home three times daily to assist her with personal and financial matters; (3) that following Harold's death, members of the Wilson family had little opportunity to visit with testatrix; (4) that the May

1994 Will (and the February 1994 Will) revoked testatrix's earlier 12 August 1988 Will, as amended by codicil dated 2 September 1992, leaving each of the Wilsons a share of her estate; (5) that the May 1994 Will caused the taxes on the annuities to be paid out of the residuary estate, in favor of Mowery, who had no blood ties to testatrix; (6) that the May 1994 Will (and the February 1994 Will) disinherited the Wilsons, who testatrix regarded as her "grandchildren"; and (7) that in order to avoid an anticipated legal challenge, Mowery procured the execution of the May 1994 Will in lieu of the February 1994 Will devising one-half of testatrix's residuary estate to him. Although relevant to the issue of undue influence, these facts do not establish that the May 1994 Will was the product of anything other than testatrix's own wishes and free will.

The evidence, which caveators do not dispute, reveals that testatrix met with her attorney the day after Harold's funeral, on 10 February 1994, to discuss changing her will. It was then that testatrix expressed her intent to leave one-half of her estate to Mowery and to disinherit the Wilsons. According to Mr. Bennett, testatrix stated that she wanted to exclude the Wilsons, "because Harold took care of them" with the $200,000 educational trust. The evidence is further undisputed that prior to Harold's death, Mowery had little contact with testatrix and, thus, had virtually no opportunity to exert his will over hers.

Notably, Mowery is not a beneficiary under the May 1994 Will, and he stands to receive $300,000 less from the annuities than he would under the 16 February 1994 bequest. Nevertheless, caveators claim that as a result of the provision regarding payment of taxes, Mowery receives a substantial financial benefit under the May 1994 disposition. Thus, caveators essentially argue that Mowery fraudulently procured the following language:

Payment of Taxes. All transfer, estate, inheritance, succession, supplemental estate, generation-skipping and other death taxes, together with any interest or penalty thereon (but excluding and [sic] tax imposed as a result of Section 2032A of the Internal Revenue Code or corresponding provision of state law), which shall become payable by reason of my death, whether in respect of property owned my [sic] me and passing under this Will, in respect of any property included in my estate under the provisions of Sections 2041 and 2042 of the Internal Revenue Code of 1986, or in respect of any other property included in my

gross estate for the purposes of determining such taxes, shall be paid out of my residuary estate.

However, the record discloses that testatrix's prior wills—the 12 August 1988 Will, as amended by codicil dated 2 Februrary 1992, and the 16 February 1994 Will—contain similar provisions. In fact, a like provision appears in Harold's will as well. Therefore, the notion that Mowery overcame the will of testatrix and caused her to include the tax provision in the May 1994 Will for his benefit is implausible.

Moreover, we are not persuaded by caveators' assertion that an issue of fact existed as to whether Mowery stood in a fiduciary relationship with testatrix so as to shift the burden on him to prove that any transaction enuring to his benefit was untainted by fraud.

As our Supreme Court observed in *McNeill v. McNeill*, 223 N.C. 178, 25 S.E.2d 615 (1943),

> The law is well settled that in certain known and definite "fiduciary relations, if there be dealing between the parties, on the complaint of the party in the power of the other, the relation of itself and without other evidence, raises a presumption of fraud, as a matter of law, which annuls the act unless such presumption be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted."

*Id.* at 181, 25 S.E.2d at 616 (quoting *Lee v. Pearce*, 68 N.C. 76 (1873)). One such fiduciary relationship is that of a " 'principal and agent, where the agent has entire management so as to be, in effect, as much the guardian of his principal as the regularly appointed guardian of an infant.' " *Cross v. Beckwith*, 16 N.C. App. 361, 363, 192 S.E.2d 64, 66 (1972) (quoting *McNeill*, 223 N.C. at 181, 25 S.E.2d at 617). Therefore,

> " '[w]hen one is the general agent of another, who relies upon him as a friend and adviser, and has entire management of his affairs, a presumption of fraud, as a matter of law, arises from a transaction between them wherein the agent is benefited, and the burden of proof is upon the agent to show by the greater weight of the evidence, when the transaction is disputed, that it was open, fair and honest.' "

*Id.* at 363-64, 192 S.E.2d at 66 (quoting *McNeill*, 223 N.C. at 181, 25 S.E.2d at 617) (quotation omitted)).

The evidence shows that on 2 September 1992, testatrix executed a power of attorney designating Mowery as her health care agent and

giving him "full power and authority to make health care decisions on [her] behalf." Caveators contend that this instrument created a fiduciary relationship between the parties, which placed the burden on Mowery to prove that the tax benefit resulting under the 1994 Will was fair, reasonable and just. However, an agent is a fiduciary only pertaining to matters within the scope of his agency. *Hutchins v. Dowell*, 138 N.C. App. 673, 531 S.E.2d 900 (2000). Because the health care power of attorney dealt exclusively with medical decisions, it did not create a fiduciary relationship between Mowery and testatrix concerning her May 1994 Will.

However, after Harold's death, testatrix executed a general power of attorney granting Mowery "full power and authority to do and to perform all and every act or thing whatsoever requisite or necessary to be done for [testatrix's] upkeep, care and maintenance and for the management of any property owned by [testatrix], as fully to all intents and purposes as [she] might or could do if personally present." The record shows that the general power of attorney was executed contemporaneously with the 16 February 1994 Will devising one-half of testatrix's estate to Mowery. The record does not, however, contain any evidence as to when Mowery learned of his appointment as testatrix's general attorney-in-fact, nor does it provide any evidence that he was acting as such when she executed the February 1994 Will or the May 1994 Will. Therefore, the court was correct in failing to submit to the jury the issue of whether a fiduciary relationship existed between Mowery and testatrix by way of the durable power of attorney. *See In re Estate of Ferguson*, 135 N.C. App. 102, 105, 518 S.E.2d 796, 798 (1999) (court properly declined to submit issue of whether power of attorney created fiduciary relationship where no evidence in record "that Propounder served as Testator's attorney-in-fact at the time Testator executed her will"); *In re Will of Atkinson*, 225 N.C. 526, 35 S.E.2d 638 (1945) (court's instruction that fiduciary relationship created between testator and attorney-in-fact erroneous where power of attorney did not exist at time will was executed). Absent evidence of a fiduciary relationship, it is not presumed that Mowery exerted his will over that of testatrix, and, thus, the burden did not fall on him to prove that the May 1994 Will was fair. Accordingly, we hold that the trial court properly directed a verdict for propounders on the issue of undue influence.

[2] Caveators next argue that they presented sufficient evidence to create an issue of fact concerning testatrix's mental incapacity to make and execute a will. Again, we disagree.

An individual possesses testamentary capacity—the capacity to make a will—if the following is true:

> [She] (1) comprehends the natural objects of [her] bounty, (2) understands the kind, nature and extent of [her] property, (3) knows the manner in which [she] desires [her] act to take effect, and (4) realizes the effect [her] act will have upon [her] estate.

*In re Will of Jarvis*, 334 N.C. 140, 145, 430 S.E.2d 922, 925 (1993). In our jurisprudence, a presumption exists that every individual has the requisite capacity to make a will, and those challenging the will bear the burden of proving, by the greater weight of the evidence, that such capacity was wanting. *Buck*, 130 N.C. App. at 412-13, 503 S.E.2d at 130. To prove lack of testamentary capacity, the caveators must "present specific evidence relating to testat[rix's] understanding of [her] property, to whom [she] wished to give it, and the effect of [her] act in making a will at the time the will was made." *Id.* at 413, 503 S.E.2d at 130.

Caveators contend that the evidence, considered in the light most favorable to them, defeats the presumption of testamentary capacity. They argue that the evidence suggests that testatrix did not know the natural objects of her bounty because she did not include the Wilsons in the May 1994 Will. Assuming that the Wilsons are natural objects of testatrix's bounty, the evidence indicates that she not only acknowledged them as such, she explained to Mr. Bennett that she did not want to leave them anything, because Harold had already provided for them in setting up their educational trust.

As further evidence that testatrix lacked testamentary capacity, caveators show "that [testatrix] was almost always drunk" and that she once made mathematical errors in calculating an employee's pay. This evidence notwithstanding, caveators have put forth no evidence that at or near the time testatrix executed the May 1994 Will, she was mentally unequipped to do so. To the contrary, Mr. Bennett testified that during the time between Harold's death and the execution of the May 1994 Will, he had no cause to believe that testatrix lacked the requisite capacity to execute a will. Furthermore, as the trial court observed, "a lunatic, an absolute lunatic, can make a valid will when he's in a lucid moment." *See In re Will of Maynard*, 64 N.C. App. 211, 227, 307 S.E.2d 416, 428 (1983) (recognizing that "the insane person during a lucid interval can make a valid will.") Thus, we conclude that a directed verdict in favor of propounders on the issue of testamentary capacity was proper.

**IN RE WILL OF SECHREST**

[140 N.C. App. 464 (2000)]

**[3]** As a final matter, caveators challenge the order awarding costs, including attorneys' fees, to propounders. The relevant provision, section 6-21 of the North Carolina General Statutes, states the following:

> Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:
>
> . . . .
>
> (2) Caveats to wills . . . ; provided, that in any caveat proceeding under this subdivision, the court shall allow attorneys' fees for the attorneys of the caveators only if it finds that the proceeding has substantial merit.
>
> . . . .
>
> The word "costs" as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow . . . .

N.C. Gen. Stat. § 6-21 (1999). Whether to allow costs and attorneys' fees under this section is a matter within the trial court's discretion. *In re Ridge*, 302 N.C. 375, 275 S.E.2d 424 (1981). Caveators have failed to show that the court abused its discretion; therefore, we uphold the award of costs, including attorneys' fees, to propounders.

In summary, we affirm the order of the trial court directing a verdict in favor of propounders on the issues of undue influence and testamentary capacity. We likewise affirm the order taxing costs, including attorneys' fees, against caveators.

Affirmed.

Chief Judge EAGLES and Judge HUNTER concur.