**IN RE ESTATE OF WHITAKER**

[144 N.C. App. 295 (2001)]

IN THE MATTER OF THE ESTATE OF MARY CROUSE WHITAKER; LUCY W. WRENN AND VERLIE W. BARKER, CAVEATORS v. OMA W. HOLYFIELD, INDIVIDUALLY AND EXECUTRIX OF THE ESTATE OF MARY CROUSE WHITAKER, RESPONDENT

No. COA00-914

(Filed 19 June 2001)

**1. Wills— undue influence—testamentary capacity—conclusory affidavits—summary judgment**

The trial court did not err by granting summary judgment for respondent on the issues of testamentary capacity and undue influence in an action arising from a petition to set aside a will where the caveators' affidavit failed to set forth specific facts showing that the decedent was incapable of executing a valid will at the time, notwithstanding her alleged mental condition in the years surrounding the will's execution, and failed to present specific facts showing that the will was executed solely as a result of respondent's fraudulent and overpowering influence. Conclusory statements of opinion do not meet the requirement of specific evidence.

**2. Wills— existence and validity of will—appropriately determined by jury**

The trial court did not err in an action arising from a contested will by entering judgment on the issue of devisavit vel non, which requires a finding of whether the decedent made a will and whether that will is before the court, where the jury was presented with testimony from respondent's witnesses, caveators presented no evidence to the jury, and the jury returned a verdict for respondent.

Appeal by caveators from judgment entered 25 October 1999 by Judge Clarence W. Carter and 30 May 2000 by Judge Peter McHugh in Surry County Superior Court. Heard in the Court of Appeals 25 April 2001.

*W. David White, for respondent-appellee.*

*Franklin Smith, for caveators-appellants.*

TYSON, Judge.

Lucy W. Wrenn and Verlie W. Barker (collectively "caveators") appeal the entry of judgment in favor of respondent, Oma W.

Holyfield ("respondent"). We affirm the trial court's initial grant of summary judgment in favor of respondent, reserving the issue of *devisavit vel non*. We find no error in the trial court's subsequent entry of judgment for respondent following a jury verdict in respondent's favor on the remaining issue of *devisavit vel non*.

## I. Facts

Caveators and respondent are sisters. Their mother, Mary Crouse Whitaker ("Whitaker") died testate on 8 July 1997. Whitaker's will, executed 17 May 1994, left the estate to respondent to the exclusion of caveators. The bulk of the estate was comprised of a partial interest in 29 acres of land and 35 acres inherited from Whitaker's deceased husband.

On 7 May 1999, caveators filed a petition to set aside Whitaker's will. The petition alleged, *inter alia*, (1) that respondent exerted undue influence on Whitaker, (2) that Whitaker lacked capacity to know her heirs and to determine how to devise her property, and (3) that respondent directed the manner in which Whitaker drafted her will. Respondent moved for summary judgment on 19 July 1999.

The trial court reviewed affidavits submitted by both parties prior to ruling on respondent's summary judgment motion. Caveators submitted a single, joint affidavit in support of their petition. The affidavit alleged that Whitaker "became unable.to make reasonable decisions, or distinguish between her daughters" following the death of Whitaker's husband in 1973. The affidavit contained various statements about Whitaker's general mental state, that she "often times did not know what she was doing," and that Whitaker had delusions that people were stealing from her. Caveators further testified in the affidavit that Whitaker "came under the influence of [respondent] and all her activities including her feeding was controlled by [respondent]."

Respondent submitted an affidavit from Janice Harris ("Harris"), an employee of the law office which drafted Whitaker's will. Harris testified that she spoke with Whitaker by telephone on more than one occasion. Whitaker told Harris that she had three surviving daughters, caveators and respondent. Whitaker expressed to Harris that she wanted to devise all of her property to respondent, because respondent had continually cared for Whitaker. Whitaker discussed with Harris the nature of her property and the deeds to her land.

IN RE ESTATE OF WHITAKER

[144 N.C. App. 295 (2001)]

Harris testified that she met with Whitaker alone regarding the proposed will. Harris testified that she read aloud each paragraph of the proposed will to Whitaker, and explained each provision to her. Harris again asked Whitaker whether it was her intent to devise all of her property to respondent. Whitaker told Harris that was her desire, since caveators had not helped her in the manner that respondent had. Harris testified that Whitaker's intent was clear, that Whitaker was competent, and that she knew the nature of her act and extent of her property. Harris further testified that respondent never prevented Harris from talking to Whitaker, or otherwise interfered with the drafting of Whitaker's will.

Respondent also submitted her own affidavit. Respondent testified that caveators continually pressured Whitaker to sell her land, and arranged potential buyers for the property. Respondent testified that Whitaker made all of her own financial decisions, purchased her own groceries, and paid her own bills up until her death. Respondent stated that Whitaker was capable of discussing family matters and the nature and extent of the land she owned. Respondent testified that Whitaker never asked for respondent's advice nor sought her opinion in making a will. Whitaker did tell respondent that she wished to leave the entire estate to respondent, since respondent had continually assisted Whitaker, and caveators had not.

On 25 October 1999, the trial court granted summary judgment for respondent, reserving the issue of *devisavit vel non*. A jury trial was held on this remaining issue at the 22 May 2000 term of the Surry County Superior Court. The jury found that the document offered by respondent as Whitaker's will was "in every essential part thereof the will of Mary Crouse Whitaker" and that the will was "executed according to the requirements of the law for a valid attested will." The trial court entered judgment in favor of respondent on 30 May 2000. Caveators appeal.

---

Caveators assign error to the trial court's initial grant of summary judgment as to all issues except *devisavit vel non*, and to the trial court's subsequent entry of judgment following a jury verdict for respondent. We affirm the trial court's ruling and find no error in the trial court's entry of judgment on the verdict.

## II. Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and where the movant is entitled to judg-

ment as a matter of law. *Hummer v. Pulley, Watson, King & Lischer, P.A.* 140 N.C. App. 270, 278, 536 S.E.2d 349, 354 (2000). The presumption is that "every individual has the requisite capacity to make a will, and those challenging the will bear the burden of proving, by the greater weight of the evidence, that such capacity was wanting." *In re Sechrest,* 140 N.C. App. 464, 473, 537 S.E.2d 511, 517 (2000), *disc. review denied,* 353 N.C. 375, —— S.E.2d —— (2001) (citation omitted).

## A. Testamentary Capacity

[1] "A testator has testamentary capacity if he comprehends the natural objects of his bounty; understands the kind, nature and extent of his property; knows the manner in which he desires his act to take effect; and realizes the effect his act will have upon his estate." *Matter of Will of Buck,* 130 N.C. App. 408, 412, 503 S.E.2d 126, 130 (1998), *affirmed,* 350 N.C. 621, 516 S.E.2d 858 (1999) (citing *In re Will of Shute,* 251 N.C. 697, 111 S.E.2d 851 (1960)).

In *Buck,* this Court noted that the caveators had presented "ample evidence . . . indicative of testator's declining mental and physical health in the months preceding his execution of the proffered will." *Id.* at 413, 503 S.E.2d at 130. However, we held that the caveators could not establish lack of testamentary capacity where there was no specific evidence "relating to testator's understanding of his property, to whom he wished to give it, and the effect of his act in making a will <u>at the time the will was made</u>." *Id.* (citation omitted) (emphasis supplied). We stated:

> In the present case, caveator presented only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will, upon which her witnesses based their opinions as to his mental capacity. However, her evidence, while showing testator's weakened physical and mental condition in general, did not negate his testamentary capacity at the time he made the will, i.e., his knowledge of his property, to whom he was giving it, and the effect of his act in making a will. Therefore, caveator's evidence was insufficient to make out a *prima facie* case of lack of testamentary capacity

*Id.; see also, Matter of Will of Maynard,* 64 N.C. App. 211, 227, 307 S.E.2d 416, 428 (1983), *disc. review denied,* 310 N.C. 477, 312 S.E.2d

IN RE ESTATE OF WHITAKER

[144 N.C. App. 295 (2001)]

885 (1984) (recognizing that "the insane person during a lucid interval can make a valid will.").

In *Sechrest, supra,* the caveators presented evidence that the testatrix failed to recognize the natural objects of her bounty because the caveators were not included in the will. *Sechrest,* 140 N.C. App. at 473, 537 S.E.2d at 518. The caveators also presented evidence that the testatrix lacked testamentary capacity because she was "almost always drunk" and made mathematical errors in calculating employee pay. *Id.*

Holding that a directed verdict for the propounder was proper, this Court noted that such "evidence notwithstanding, caveators have put forth no evidence that at or near the time testatrix executed the May 1994 Will, she was mentally unequipped to do so." *Id.* We noted the trial court's finding that, " 'a lunatic, an absolute lunatic, can make a valid will when he's in a lucid moment.' " *Id.* Moreover, the caveators failed to show that the testatrix did not recognize the natural object of her bounty where "the evidence indicates that she not only acknowledged them as such, she explained . . . that she did not want to leave them anything, because [her husband] had already provided for them in setting up their educational trust." *Id.*

The present case is analogous. The only evidence presented by caveators to rebut the presumption of Whitaker's capacity was their joint affidavit. Caveators' affidavit contains various statements regarding Whitaker's overall mental health from 1973 until her death in 1997. The only mention of the actual execution of the will was a statement that Whitaker "was not competent in our opinion to manage her affairs before the year of 1990 and she certainly was not able to manage her business affairs in 1990 and in the month of May, 1994 and on May 17, 1994."

This conclusory statement of opinion does not meet the requirement of specific evidence establishing that Whitaker did not understand her property, to whom she wished to give it, and the effect of her act in making a will at the time the will was executed. Such conclusions in an affidavit, as opposed to statements of fact, are not properly considered on a motion for summary judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 56(e) ("affidavits shall set forth such facts as would be admissible in evidence"); *Ward v. Durham Life Ins. Co.,* 325 N.C. 202, 208, 381 S.E.2d 698, 701 (1989) (portions of affidavit containing conclusions as opposed to statements of fact properly stricken); *Butler v. Berkeley,* 25 N.C. App. 325, 332, 213

S.E.2d 571, 575 (1975) ("mere conclusions of the pleader are not to be considered in opposition to or in support of a motion for summary judgment.").

As in *Buck*, caveators here "presented only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will, upon which [caveators] based their opinions as to [her] mental capacity." *Buck*, 130 N.C. App. at 413, 503 S.E.2d at 130. Caveators also testified in their affidavit that Whitaker's will "did not even mention either of us . . . . We were left out completely."

As stated in *Sechrest*, such evidence fails to show that a testatrix failed to recognize the natural object of her bounty where the evidence indicates "that she not only acknowledged them as such, she explained . . . that she did not want to leave them anything . . . ." *Sechrest* at 473, 537 S.E.2d at 518. Both respondent's and Harris' affidavit establish that Whitaker knew the identity of her daughters, knew the identity of the caveators, and that Whitaker affirmatively expressed her desire to disinherit caveators because they "had not done anything for her."

In sum, caveators' affidavit fails to set forth specific facts showing that Whitaker was incapable of executing a valid will at the time she did so, notwithstanding her alleged mental condition in the years surrounding the will's execution. *See Maynard*, 64 N.C. App. at 227, 307 S.E.2d at 428 ("the insane person during a lucid interval can make a valid will."). Respondent, as the moving party, has satisfied her burden of showing that there was no genuine issue of material fact as to Whitaker's testamentary capacity.

### B. Undue Influence

We also hold that the trial court properly granted summary judgment on the issue of respondent's alleged undue influence over Whitaker. "In the context of a will caveat, '[u]ndue influence is more than mere persuasion, because a person may be influenced to do an act which is nevertheless his voluntary action.' " *Sechrest*, 140 N.C. App. at 468, 537 S.E.2d at 515 (quoting *Buck* at 413, 503 S.E.2d at 130). "The influence necessary to nullify a testamentary instrument is the 'fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result.' " *Id.* at 468-69, 537 S.E.2d at 515 (quoting *In re Will of Dunn*, 129 N.C. App. 321, 328, 500 S.E.2d 99,

103-04, *disc. review denied and review dismissed,* 348 N.C. 693, 511 S.E.2d 645 (1998)).

Factors relevant to the issue of undue influence include:

'1. Old age and physical and mental weakness. 2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision. 3. That others have little or no opportunity to see [her]. 4. That the will is different from and revokes a prior will. 5. That it is made in favor of one with whom there are no ties of blood. 6. That it disinherits the natural objects of [her] bounty. 7. That the beneficiary has procured its execution.'

*Id.* at 469, 537 S.E.2d at 515 (quoting *In re Andrews,* 299 N.C. 52, 55, 261 S.E.2d 198, 200 (1980)).

In *Matter of Will of Prince,* 109 N.C. App. 58, 63, 425 S.E.2d 711, 714 (1993), we held that the evidence presented was insufficient to warrant submission of the issue of undue influence to a jury. The caveator presented evidence that the testatrix was old and at times suffered with memory loss; that the propounder, the testatrix's brother, assisted testatrix with her affairs; that the propounder's former daughter-in-law made an appointment for the testatrix with the attorney; and that the propounder drove the testatrix to see her attorney and sat in the conference she had with her attorney. *Id.* at 63, 425 S.E.2d at 714-15. The caveator also presented evidence that the testatrix did not make provisions in her will for her son and her two grandchildren; that on occasions the testatrix expressed to others that she was afraid of the propounder; and that the propounder was a beneficiary under the will. *Id.* at 63, 425 S.E.2d at 715.

In holding that such evidence was insufficient to support an inference of undue influence, we stated that the evidence "fails 'to support an inference that the will was the result of an overpowering influence exerted by propounder of testatrix which overcame testatrix's free will and substituted for it the wishes of propounder, so that testatrix executed a will that she otherwise would not have executed.' " *Id.* (quoting *In re Coley,* 53 N.C. App. 318, 324, 280 S.E.2d 770, 774 (1981)).

The evidence of undue influence presented by caveators here consisted of statements in their joint affidavit. The evidence included the statement that Whitaker "was easily swayed by the daughter in her presence at a particular time and on a particular occasion"; that

she was "easily talked into anything"; that respondent saw Whitaker daily; and that Whitaker "came under the influence of [respondent] and all her activities including her feeding was controlled by [respondent]." Caveators further stated that it is "our opinion that this Will was drafted pursuant to the instructions of our sister, [respondent]."

Caveators failed to carry their burden of presenting specific evidence that Whitaker's will was the result of an "overpowering" and "fraudulent influence" exerted by respondent which overcame Whitaker's free will. The only statement in caveators' affidavit alluding to any influence of respondent in the execution of the will was a statement that "[i]t is further our opinion that this Will was drafted pursuant to the instructions of our sister, [respondent]."

Again, such conclusory statements of opinion are not evidence properly considered on a motion for summary judgment. *See Butler, supra; Ward, supra.* Caveators failed to present evidence of the factors relevant to showing undue influence as enumerated in *Sechrest.* Caveators did not show that Whitaker executed the will in respondent's home and subject to respondent's "constant association and supervision." Caveators presented no evidence to rebut Harris' affidavit that she and Whitaker were alone when Harris explained the will provisions to Whitaker and asked Whitaker's intent in devising her property. Caveators did not rebut Harris' testimony that Harris and Whitaker were alone when Whitaker executed the will, and that Whitaker did not execute the will at respondent's home.

Caveators did not present evidence that they or others had little, if any, opportunity to visit or speak with Whitaker. Caveators' affidavit states that caveators visited with Whitaker weekly from 1973 until her death in 1997. Whitaker's will was not different from a prior will, nor did it revoke a prior will. The will was in favor of a blood relative. Caveators failed to present specific evidence as to how respondent procured execution of the will.

In sum, caveators failed to present specific facts showing that the will was executed solely as a result of respondent's fraudulent and overpowering influence over Whitaker. We hold that the trial court did not err in entering summary judgment for respondent on the issues of testamentary capacity and undue influence. Whitaker was entitled by law to disinherit caveators. *See, e.g., Ladd v. Estate of Kellenberger,* 314 N.C. 477, 483, 334 S.E.2d 751, 756 (1985) ("The law in North Carolina does not prohibit parents from disinheriting chil-

RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.

[144 N.C. App. 303 (2001)]

dren."); *Kidder v. Bailey*, 187 N.C. 505, 122 S.E. 22, 23 (1924) (citations omitted) ("the right of the testator to omit the heir from his will is not to be denied or curtailed.").

### III. *Devisavit Vel Non*

[2] The trial court did not err in entering judgment in favor of respondent on the issue of *devisavit vel non*. " 'Devisavit vel non requires a finding of whether or not the decedent made a will and, if so, whether any of the scripts before the court is that will.' " *Dunn*, 129 N.C. App. at 325, 500 S.E.2d at 102 (quoting *In re Will of Hester*, 320 N.C. 738, 745, 360 S.E.2d 801, 806 (1987), *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987)).

The jury was presented with testimony from respondent's witnesses. Caveators presented no evidence to the jury. The jury returned a verdict finding that the document offered by respondent as Whitaker's will was "in every essential part thereof the will of Mary Crouse Whitaker" and that the will was "executed according to the requirements of the law for a valid attested will." The jury appropriately determined the issue of *devisavit vel non*. The trial court properly entered judgment on the jury's verdict in favor of respondent.

No error.

Judges WALKER and HUNTER concur.